**Patrick H. HYATT; Herman O. Caudle and Mary P. Lovingood, on behalf of themselves and all others similarly situated, Plaintiffs,**

**and**

**North Carolina Department of Human Resources, Disability Determination Services, Plaintiffs-Intervenors,**

**v.**

**Margaret M. HECKLER, or her successors in office, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. C–C–85–655–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

Sept. 11, 1985.

Charles McBrayer Sasser, Legal Services of Southern Piedmont, Inc., John Wester, Robinson, Bradshaw & Hinson, Independence Center, Charlotte, N.C., for plaintiffs.

Jeffrey L. Bishop, Charlotte, N.C., for plaintiff-intervenor.

Richard S. Poe, Asst. U.S. Atty., Charlotte, N.C., Jason Baron, Office of General Counsel, U.S. Dept. of Human Services, Baltimore, Md., for defendant.

## ORDER

McMILLAN, District Judge.

This case is before the court on plaintiffs' second and third motions for attorney fees.

The background to this case is set out in this court's orders reported at 579 F.Supp. 985 (W.D.N.C.1984) and 586 F.Supp. 1154 (W.D.N.C., 1984), *vacated* and *remanded*, 757 F.2d 1455 (4th Cir.1985), and the order of remand filed June 25, 1985, and will not be repeated in detail here.

In its decision reported at 586 F.Supp. 1154, the court set in detail the *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) and *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) factors and their applicability to a fee award in this case. There is no need to repeat that litany once again. The issue presented to the court at this time is whether plaintiffs' fee award should be

reduced to account for the issues on which the Appeals Court reversed this court's judgment and on which defendant might therefore be said to have prevailed.

■ Before addressing the specific issue of reduction of the award, the court will address the proposition ·advanced by defendant that plaintiffs are no longer prevailing parties as a result of the Fourth Circuit's decision. She argues that because the injunction against non-acquiescence was vacated, and because that was "all plaintiffs were asking for in bringing this suit," the plaintiffs are no longer prevailing parties and should be awarded no attorney fees. The court does not accept that contention. It defies the imagination to concoct an interpretation of this suit that would make plaintiffs anything but prevailing parties. Indeed, as discussed below, the court finds that, despite certain modifications of the original judgment, plaintiffs' achievements remain so substantial as to justify the court in finding that they have obtained excellent results and to award all but a small portion of the fees requested.

In vacating this court's injunction against the defendant's policy of non-acquiescence, the Fourth Circuit specifically stated that "the Secretary should not deem vacation of the injunction as approval of the policy [of nonacquiescence]" and that "we will not assume that the Secretary will disregard the views expressed in the Conference Report [to the 1984 Social Security Disability Reform Act] about the Secretary's policy of nonacquiescence in circuit law." (*Hyatt v. Heckler, supra,* 757 F.2d at 1460, 1461). The defendant appears to have taken the admonitions of the courts and Congress to heart. On June 3, 1985, defendant issued a news release announcing that the Social Security Administration was abandoning, in the overwhelming majority of cases, its "practice of routinely not applying a circuit court's interpretation beyond the decision in the particular case." In its Interim Circular No. 185, apparently issued simultaneously for inclusion in the Office of Hearings and Appeals Handbook, defendant states

SSA has been subject to increasing litigation in recent years involving a myriad of program issues. One of the most troubling questions which has been raised by Congress, the Courts, and by the public at large has been the issue of nonacquiescence. Recently, nonacquiescense has been the subject of various law suits challenging its legality. Moreover, Congress, in enacting the 1984 Disability Amendments, indicated in a Conference Report on that legislation that the Secretary should seek a resolution of the issue. These developments have led to a reexamination of the agency's practices. As a result, the Secretary has decided to modify the long-standing policy and has established a procedure described below. These procedures require that particular circuit court decisions will be considered prior to a final decision of the Secretary being rendered on the case.

The nexus between this suit and the modification of the Secretary's admittedly "long-standing policy" of nonacquiescence is thus admitted by the Secretary herself.

More fundamentally, plaintiffs have achieved the result for which the suit was originally filed and pursued. In order to be a prevailing party, "what always must occur is the establishment of a right or the proscription of a wrong." *Smith v. University of North Carolina,* 632 F.2d 316, 347 (4th Cir.1980). Plaintiffs have been granted the *right* to new hearings under lawful standards. This relief would not have been achieved for most of the plaintiffs benefited by the order on remand filed June 25, 1985, had the suit not been filed and prosecuted to this point. Although the intervening legislation made the remands of the *Dotson* class "automatic," the members of the class who were not already in federal court benefited only because a class action had been filed in their behalf. The *Myers* and *Martin* class members would not have been guaranteed new hearings at all. The scope of the reconsideration of the claims of the latter two classes' members is beyond that which would have been required by an individual remand in those

cases already filed in federal court. Plaintiffs' filing of the *Hyatt* suit, the motions for class certification and injunctive and declaratory relief, were all necessary to bring to the plaintiffs' classes the relief obtained by the issuance of the June 25, 1985, order of remand.

Defendants' exclusive focus on the vacation of the injunction against nonacquiescence is misplaced. That approach attempts to trivialize what has been a more than significant effort on behalf of and victory for the *rights* of the plaintiffs.

Defendant further argues that plaintiffs are not prevailing parties because the classes gaining benefits from this suit have shrunk drastically because of the reversal by the Fourth Circuit of the inclusion in the *Martin* and *Myers* classes of persons who did not exhaust administrative remedies or received adverse decisions from the Appeals Council more than 60 days prior to the filing of this suit but did not file suit pursuant to the requirements of 42 U.S.C. § 405(g). The Secretary brings forward figures (not previously presented to the court) that the original *Hyatt* classes, in total, may have included over 60,000 persons entitled to receive review of their claims but that the class has now shrunk to "only" between 10,000 and 15,000 people.

Although this reduction might entitle defendant to some reduction in the amount of fees awarded should it be found that a substantial portion of counsel's time was spent solely on those individuals' claims, this development does not change plaintiffs' status as prevailing parties. The fact remains that at least 10,000 persons and probably more, in North Carolina now have the opportunity for reconsideration of their disability claims where they had no such opportunity before this suit was filed and won. Even those persons benefited by the Social Security Disability Reform Act of 1984 (the *Dotson* class in particular), except those persons whose cases were already pending in federal court, would not have had the benefit of review had the class not been certified in *Hyatt* prior to September 19, 1984. The *Myers* and *Mar-*

*tin* class members who remain in the suit had no provision made for re-review of their claims under the new act.

Furthermore, as will be set out more fully below, the Supreme Court has specifically stated that the number of persons benefited in a particular lawsuit is not a "consideration of significance in calculating fees," *Blum v. Stenson*, 465 U.S. 886, ——, n. 16, 104 S.Ct. 1541, 1549, n. 16, 79 L.Ed.2d 891, since, "presumably, counsel will spend as much time and will be as diligent in litigating a case that benefits a small class of people, or, indeed, in protecting the civil rights of a single individual." *Id.*

In conclusion, the court finds that plaintiffs remain the prevailing parties in this case and that the government's position has not been substantially justified for the reasons set out in the orders previously filed and the matters discussed herein. Therefore, plaintiffs are entitled to an award of attorney fees.

The court has already set out in its earlier attorney fee order the factors to be considered in determining the amount of fees to which plaintiffs are entitled and their applicability to this case. With a few minor adjustments, they remain applicable here. The central issue is whether, considering the Fourth Circuit's decision, the 1984 Disability Reform Act, and the final order entered in this case on June 25, 1985, a reduction in the award of fees is warranted.

Upon reviewing the pleadings, trial transcript and records of other hearings conducted in this case, the Fourth Circuit's decision and the final order of remand, the court finds that the plaintiffs achieved *exceptional results*, despite reductions in the size of the class because of the Fourth Circuit's ruling on the merits of the legal question of exhaustion and the applicability of the requirements of 42 U.S.C. § 405(g).

Defendant argues that the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), requires substantial reduction, if not elimination, of the award requested. In

*Hensley,* the Supreme Court held that where a plaintiff presents "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" and one or more of those "distinctly different claims for relief" is unsuccessful, "the congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435, 103 S.Ct. at 1940.

There are two claims which defendant contends were unsuccessful here—the request for an injunction against the Secretary's policy of nonacquiescence and the requests for relief for members of the *Martin* and *Myers* classes who did not follow the requirements of 42 U.S.C. § 405(g) and who were, therefore, removed from the class by the Fourth Circuit's ruling.

The court has discussed the first claim at length, above, and finds no basis to penalize plaintiffs for their work which, while not directly judicially enforced, did by defendant's own public acknowledgment contribute to a change in her policy more widespread than ever possible in any one lawsuit. *See, Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir.1979), *after remand,* 651 F.2d 214 (1981), *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681; *Smith v. University of North Carolina, supra.*

■ As to the second claim, this lawsuit does benefit *directly* a reduced number of persons as a result of the rulings by the Fourth Circuit on the legal issues of exhaustion of administrative remedies and the applicability of Section 405(g). However, this element of the case can not be said to represent a separate "claim for relief" in the language of *Hensley. Hensley* is clear in that what is referred to are separate substantive claims for relief which are severable from the rest of the litigation. The Court in *Hensley* states:

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... The result is what matters.

*Id.* 461 U.S. at 435, 103 S.Ct. at 1940.

A comparison between the issues involved in this case and the issues involved in *Hensley* illustrates the difference between separate, distinct claims for relief and interrelated claims based on a common core of facts or related legal theories. In *Hensley,* the plaintiffs were complaining about different, severable aspects of their conditions of confinement. In this case, the plaintiffs were complaining about the Secretary's treatment of their claims for disability benefits (in relation to circuit court precedent) in three separate areas. Plaintiffs achieved success in each of those three areas. Cases involving *Dotson, Myers* and *Martin* claims are all being remanded to the Secretary for reconsideration. The loss of the exhaustion issue represented only a reduction in the size of the *Martin* and *Myers* classes, not a disapproval of their substantive claims for relief. Indeed, those persons remaining in those classes have obtained new full-scale review of their claims at the administrative level with the later opportunity to appeal ad-

verse decisions to the courts pursuant to the requirements of 42 U.S.C. § 405(g). Additionally, as noted above, the Supreme Court has cautioned that the *number* of persons benefited is not of considerable significance.

The court finds that plaintiffs have achieved excellent results, and as stated in its earlier order, would be entitled to enhancement of their fees but for the limitations imposed by the act under which fees are claimed. According to *Hensley*, based on the finding that excellent results have been obtained, plaintiffs are entitled to a fully compensatory fee for all hours reasonably expended.

Defendant does not question that plaintiffs' counsel's hours were reasonably expended, although she does contest their right to compensation for all of the hours. Although *Hensley* would seem not to require *any* reduction, the court will order some reduction to account for the time spent litigating the exhaustion and § 405(g) issues. That issue did not represent a large portion of counsel's efforts in this court, but it appears that a not insignificant amount of time was spent by counsel defending this court's order in their favor on this point in the circuit court. The court finds that, in fairness, some reduction in the amount of fees required to be paid by the government should be made. The court has reviewed the pleadings, and finds that a reduction of 5% in fees for the time spent researching and arguing the exhaustion and § 405(g) requirements issues is ample.

The court emphasizes that it finds this fee request very modest in light of the labor expended on behalf of the plaintiffs over a relatively brief time span and because of the magnitude of this suit and the opportunity for relief brought to thousands of our most needy and deserving citizens— the workers of our state who, because of difficulties beyond their control, have lost the ability to perform substantial gainful employment and who now ask to be allowed to draw on the contributions they

and others have made to our Social Security system.

The court's fee awards of April and May, 1984, are brought forward in the amount of $89,728.85 in fees for plaintiffs' counsel (intervenor's counsel is no longer entitled to a fee award because of the dismissal by the Fourth Circuit of the intervenor's complaint) and expenses and costs in the amount of $2,056.26.

Since the last fee award through July 25, 1985, additional counsel have been substituted in this case and counsel have devoted many more hours to the case. Charles McBrayer Sasser, a 1981 University of North Carolina School of Law graduate and legal services attorney specializing in Social Security disability law, has devoted 303 hours to the case as lead counsel for legal services. His expenses total $857.70.

From the firm of Robinson, Bradshaw and Hinson, which has continued to devote many exceptional hours of attorney time to this case, John R. Wester, lead counsel, has devoted an additional 299.10 hours to the case. Dan Coenen, a 1978 law graduate of Cornell Law School where he was editor-in-chief of the law review, clerked for Judge Clement Haynsworth of the Fourth Circuit and Justice Blackmun of the Supreme Court before entering the practice of law in 1981. His work on this case has been of the highest quality as reflected in the briefs and arguments of counsel, and he has devoted 307.4 hours to the case.

Robert W. Bryan has devoted an additional 41.2 hours to the case, Herman Spence III has devoted an additional 162.85 hours to the case, and David C. Wright III has devoted 21.3 hours to the case. The expenses documented by the firm total $6,740.30 since the last fee and expenses award.

Campbell Lucas Vorhoff, and Brenda Dutton Mosier, paralegals employed by Robinson, Bradshaw and Hinson, have devoted an additional 66.60 hours and 15.7 hours, respectively, to the case.

David Williams, a Harvard law school student, has devoted 25.35 hours to the case.

The court has reviewed the records and finds that the hours billed are reasonable and that plaintiffs are entitled to full reimbursement (minus the 5% overall reduction) for the time spent through July 25, 1985, negotiating and implementing the order on remand filed June 25, 1985, to this date, and pursuing the attorney fees award. The court expresses no opinion at this time on the propriety of awarding further fees for work done in furtherance of the implementation of the order on remand from July 26, 1985, forward.

 The court finds that the rates of reimbursement for attorneys Sasser, Wester, Bryan and Coenen would normally be at or near $125 per hour except for the limitation in the Equal Access to Justice Act (EAJA) to a rate of $75 per hour plus an allowance for cost of living increases or where a "special factor" is present. The court finds that the special experience of the attorneys in this area (that of Wester and Coenen apparently gained through the litigation) is such a "special factor," justifying a higher hourly rate. In addition, the current cost of living adjustment (based on figures from the Consumer Price Index of the United States Department of Labor) to the EAJA fee allows award of a fee up to approximately $95 per hour. *See* this court's decision in *Black v. Heckler*, C–C–83–38 (order filed July 12, 1985). *See also Action on Health and Smoking v. C.A.B.*, 724 F.2d 211 (D.C.Cir.1984). The rate for attorneys Sasser, Wester and Coenen is hereby determined to be $95 per hour.

The court finds that a reasonable rate for reimbursement of attorneys Spence and Wright is $75 per hour. The services of paralegals Vorhoff and Mosler and law student Williams should be compensated at the rate of $30 per hour, a fee comparable to that awarded by this court for the services of paralegals and law students in other comparable cases. *See, Pratt v. Carolina Machinery*, C–C–83–270–M (order awarding attorney fees filed March 19, 1985).

The following hours have been shown by affidavit to have been reasonably expended on this litigation from March 15, 1984, through July 25, 1985, and, multiplied by the rates found to be reasonable, above, produce the following calculations of reasonable attorney fees:

| | | |
|---|---|---|
| Wester | 299.10 hours × $95 per hour = | $ 28,414.50 |
| Sasser | 303.00 hours × $95 per hour = | 28,785.00 |
| Coenen | 307.04 hours × $95 per hour = | 29,168.80 |
| Bryan | 41.20 hours × $95 per hour = | 3,914.00 |
| Spence | 162.85 hours × $75 per hour = | 12,213.75 |
| Wright | 21.30 hours × $75 per hour = | 1,597.50 |
| | Total: | $104,093.55 |

Paralegal fees:

| | | |
|---|---|---|
| Vorhoff | 66.60 hours × $30 per hour = | $ 1,998.00 |
| Mosier | 15.70 hours × $30 per hour = | 471.00 |
| Williams | 25.35 hours × $30 per hour = | 760.50 |
| | Total: | $ 3,229.50 |

The court brings forward the amounts awarded to plaintiffs for reasonable attorney fees awardable under the EAJA in May, 1984, in the amount of $89,728.85 in attorney fees and $2,056.26 in costs.

Plaintiffs are entitled to attorneys' fees of $187,199.30 ($197,051.90 less 5%) for their services rendered through July 25, 1985, plus reimbursement for $7,598.00 in expenses. An upward adjustment will not be made for the reasons set out in the order of May 1984, 586 F.Supp. 1154, 1159.

IT IS THEREFORE ORDERED:

1. That the reasonable value of the services rendered by plaintiffs' counsel which

are properly taxable under the Equal Access to Justice Act is $187,199.30.

2. That the sum of $187,199.30 shall be paid to plaintiffs by the United States as counsel's full and only fee for representing plaintiffs in this civil action through July 25, 1985.

3. That defendant shall also pay to plaintiffs the plaintiffs' expenses and costs of $7,598.00.