**Norma HOLDEN, et al., Plaintiffs,**

**and**

**State of Ohio, Through Richard F. Celeste, Governor, Plaintiff-Intervenor,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. C84–548.**

United States District Court, N.D. Ohio, E.D.

July 23, 1986.

David B. Dawson, Louise McKinney, Carolyn Carter, Ann Porath, Paula Gellman, Fred P. Schwartz, Cleveland, Ohio, for plaintiffs.

Rita S. Eppler, Asst. Atty. Gen., Columbus, Ohio, for plaintiff-intervenor.

Rita S. Eppler, Asst. Atty. Gen., Columbus, Ohio, Kathleen A. Sutula, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On August 27, 1985, this Court ruled that the prevailing plaintiffs in this social security disability class action were entitled to attorneys' fees, costs and expenses from the Secretary of Health and Human Services ("Secretary")[1] under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *Holden v. Heckler,* 615 F.Supp. 686 (N.D. Ohio 1985). By agreement of the parties, that opinion dealt only with the threshold question of whether any fees should be awarded. *Id.* at 687 n. 1. After this Court sustained the plaintiffs' right to EAJA fees, costs and expenses, the Secretary was permitted discovery with respect to the amount sought, *id.* at 698, and plaintiffs submitted a supplemental application for additional fees.

Plaintiffs now seek attorneys' fees, costs and expenses totaling $251,789.15.[2] The Secretary objects to the hourly rates sought for counsel, law clerks and paralegals, to the number of hours for which compensation is sought, and to any compensation for certain tasks performed by counsel. The Secretary also argues that some of the costs and expenses sought by plaintiffs are not available under the EAJA. Plaintiffs have submitted voluminous materials in support of their application and both sides have thoroughly briefed the relevant legal issues. For the reasons set forth below, plaintiffs' application—with a slight reduction for excessive and

---

1. Otis R. Bowen, the current Secretary, is hereby substituted for his predecessor, Margaret M. Heckler, as the defendant in this action. *See* Fed.R.Civ.P. 25(d)(1); *Bowen v. American Hospital Ass'n,* 476 U.S. 610, 106 S.Ct. 2101, 2105 n. 3, 90 L.Ed.2d 584 (1986).

2. *See infra* at 1044 & n. 4.

duplicative work on small portions of this case—is approved.

## I. THE FEE APPLICATION

The plaintiffs were represented by David B. Dawson, Esq., Louise McKinney, Esq. and Carolyn L. Carter, Esq. of The Legal Aid Society of Cleveland ("Legal Aid"); Mark J. Valponi, Esq. and John Habat, Esq. of the Cleveland law firm of Kelley, McCann & Livingstone ("Kelley, McCann"); and, with respect to the fee application itself, by Fred P. Schwartz, Esq. of the Cleveland law firm of Hahn, Loeser, Freedheim, Dean & Wellman ("Hahn, Loeser"). The application as supplemented seeks compensation for the following work:

Attorneys' Fees, Costs and Expenses
Through May 20, 1985

| | Fees | | | |
|---|---|---|---|---|
| | Hours | × Rate | = | Amount |
| Mark Valponi | 346.1 | $75 | | $ 25,957.50 |
| John Habat | 55.1 | $65 | | 3,581.50 |
| David Dawson | 894.8 | $125 | | 111,850.00 |
| Louise McKinney | 250.7 | $100 | | 25,070.00 |
| Carolyn Carter | 283.4 | $125 | | 35,425.00 |
| Dean della Volpe | 115.1 | $30 | | 3,453.00 |
| Toll-free number answering | 59 hours, 1 min. | | | 3,283.16 [3] |
| | Subtotal Fees: | | | $208,620.16 |

| Costs and Expenses | | |
|---|---|---|
| Expenses incurred by Kelley, McCann & Livingstone | $ | 543.03 |
| Deposition costs and other expenses | | 353.59 |
| Travel costs | | 73.58 |
| Toll-free number costs | | 1,716.77 |
| Computer-assisted legal research costs | | 577.22 |
| Mailing costs | | 282.45 |
| Other long-distance telephone costs | | 621.48 |
| Subtotal Costs and Expenses: | $ | 4,171.12 |
| Subtotal Fees, Costs and Expenses Through May 20, 1985 | | $212,791.28 |

3. The time spent on the toll-free number is broken down as follows:

| | Hours | × Rate | = | Amount |
|---|---|---|---|---|
| Dawson | 10 hours, 33 min. | $125 | | $1,318.75 |
| McKinney | 3 hours, 4 min. | $100 | | 306.66 |
| Carter | 4 hours, 45 min. | $125 | | 593.75 |

Attorneys' Fees, Costs and Expenses
After May 20, 1985

| | Fees | | | |
|---|---|---|---|---|
| | Hours | × Rate | = | Amount |
| Valponi | 25 | $75 | | $ 1,875.00 |
| Dawson | 94.5 | $125 | | 11,625.00 |
| | (less 1.5 hours erroneously included in original application: $11,812.50 – 187.50) | | | |
| McKinney | 42.5 | $100 | | 4,250.00 |
| Carter | 28.1 | $125 | | 3,512.50 |
| Bill Matthews (law clerk) | 93.5 | $30 | | 2,805.00 |
| Fred Schwartz | 120 | $94.09 | | 11,290.80 |
| Hahn, Loeser law clerks and paralegals | 6.6 | $30 | | 198.00 |
| | Subtotal Fees: | | | $ 35,556.30 |

| Costs and Expenses | | |
|---|---|---|
| Deposition transcript of David Dawson | $ | 172.40 |
| Long-distance telephone hotline | | 2,785.77 |
| Computer-assisted legal research costs | | 396.08 |
| Postage | | 3.50 |
| Photocopying costs | | 83.82 |
| Subtotal Costs and Expenses: | $ | 3,441.57 |
| Subtotal Fees, Costs and Expenses After May 20, 1985 | | $ 38,997.87 |
| TOTAL Fees, Costs and Expenses | | $251,789.15 [4] |

As noted, the Secretary's objections to the fee application fall into three categories: hourly rates; number of compensable hours; and costs and expenses.

## II. HOURLY RATES

The Secretary does not challenge the hourly rates sought by the Kelley, McCann counsel, Valponi ($75) and Habat ($65), but does contest the amounts sought by Legal Aid counsel, Dawson, McKinney and Carter; by Hahn, Loeser's Schwartz for his

| | Hours | × Rate | = | Amount |
|---|---|---|---|---|
| della Volpe | 9 hours, 33 min. | $30 | | 286.50 |
| Law Clerks | 31 hours, 6 min. | $25 | | 777.50 |
| | | | | $3,283.16 |

4. The Court's summation of plaintiffs' request exceeds plaintiffs' total amount claimed ($248,-

work on the fee application; by Legal Aid and Hahn, Loeser for work by law clerks and paralegals; and by all counsel for time spent answering the toll-free telephone line provided for class members by order of this Court. *Holden v. Heckler*, 584 F.Supp. 463, 496 (N.D.Ohio 1984) (preliminary injunction order ¶ 7(a)).

### A. *Legal Aid Counsel Dawson, McKinney and Carter*

The Secretary claims that the $125 hourly rate sought by Dawson and Carter and the $100 rate sought by McKinney are precluded by 28 U.S.C. § 2412(d)(2)(A)(ii), which provides in pertinent part:

> [A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

Plaintiffs assert that the higher hourly rates are justified by the "limited availability" in the Cleveland area of attorneys with Dawson and McKinney's expertise in disability law and Carter's knowledge of complex litigation.

Uncontroverted affidavits establish that Dawson, McKinney and Carter are among the leading practitioners of poverty law in the Cleveland area and possess lawyering skills unique not only in the local bar generally but even among the subset of attorneys who practice social security disability law. Dawson has represented individuals in disability cases since 1974 and has specialized in the field since 1978; he serves as an adviser and consultant on disability issues for attorneys at Legal Aid and at legal services offices throughout Ohio, conducts training seminars for legal services attorneys, served on Governor Richard Celeste's Task Force on Continuing Disability Investigations, and acted as co-counsel on two other disability class actions. McKinney has litigated numerous disability cases

and trained and advised other legal services attorneys; she also has lectured on disability issues at a number of colleges and universities in northern Ohio. Carter has extensive experience with complex litigation and federal civil rights cases.

C. Lyonel Jones, the director of Legal Aid, demonstrated by affidavit that the skills of these three counsel were crucial to swift and successful prosecution of this class action:

> The attorneys representing the plaintiffs class in this action provide a combination of background and skill that would have been available from few, if any, other sources in Ohio. The effective prosecution of *Holden v. Heckler* required specialized expertise in Social Security issues, such as that which David Dawson and Louise McKinney p[oss]ess. In addition, it required ... experience in complex federal litigation, class action issues, and jurisdictional issues, such as Carolyn Carter possesses. Finally, it required an organization that was willing to commit significant time and resources to the case, with any ultimate recovery dependent upon an EAJA fee petition....

Franklin Hickman, a private attorney with extensive experience in disability cases, demonstrated the corollary to Jones' proposition—namely, that the average disability law practitioner could not have handled this case nearly as well as the Legal Aid attorneys did. He stated:

> I would not have been able to represent the class in the *Holden* case while in private practice unless I were working with Legal Aid Society attorneys and relying on their resources. To my knowledge there are few, if any, private attorneys in the Cleveland area who would assume full responsibility for representation in a case like the *Holden* case.

Hickman also attested to the reasonableness of the hourly rates sought, as did

984.15) by $2,805.00. Review of the figures listed at pages 5–6 of plaintiffs' Supplement to Application for Attorneys' Fees Pursuant to the Equal Access to Justice Act, filed October 25,

1985, indicates that the amount claimed for Legal Aid law clerk Bill Matthews was omitted from the total amount claimed. The Court will assume the omission was inadvertent.

David Weiner, a Hahn, Loeser partner specializing in litigation.

The Secretary established by affidavit that since 1983 some 330 attorneys have filed social security disability actions in the Northern District of Ohio; this statistic, it is alleged, demonstrates that there is not a limited availability of attorneys to prosecute disability cases. The Sixth Circuit has found such statistics relevant to the "limited availability" clause of subsection 2412(d)(2)(A)(ii), but in the quite different context of individual appeals from decisions denying or terminating disability benefits. In *Chipman v. Secretary of Health and Human Services,* 781 F.2d 545 (6th Cir. 1986), the court held that the district court did not abuse its discretion in refusing to award fees above $75 per hour in a standard social security case. There the record established "that there are in fact an adequate number of attorneys in the Memphis area willing and competent to represent Social Security claimants." *Id.* at 547 (quoting from unpublished opinion in *Hamric v. Secretary of Health and Human Services,* No. 85–5236 (6th Cir. filed March 19, 1985)). The court also declined to find the lower court's decision clearly erroneous merely because social security is a specialized and allegedly unattractive area of practice or because counsel ordinarily billed more than $75 per hour. *Id.* at 547–48.

*Chipman,* however, is logically limited to its facts, for its reasoning is inapplicable to a massive class action, which is—to use plaintiffs' appropriate metaphor—to an ordinary disability appeal as an orange grove is to a single apple. The record demonstrates that this case required skills which Legal Aid counsel possess and which few other Cleveland area lawyers share. As Dawson stated at his deposition, and as Jones and Hickman confirmed, practitioners of the type cited by the Secretary and the *Chipman* court lack expertise in complex litigation and lack the time and resources to manage a class action; law firms which do possess such expertise, time and resources lack knowledge of and experience with the disability system. Dawson Dep. at 69–70. His remarks are entirely consistent with this Court's experience.

Attorneys who bring individual disability cases rarely demonstrate the skills needed in a case such as *Holden;* large firms skilled in complex litigation never handle disability cases.

The government also contends that the expertise of Legal Aid counsel was unnecessary because this litigation consisted of "a broad attack on agency regulations." It relies on *Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211, 218 (D.C.Cir.1984), where the court declined to waive the $75 ceiling because "a challenge of the CAB regulations as arbitrary and capricious did not necessarily require the services of attorneys with ASH's subject matter expertise." *Holden,* however, dealt not with a facial challenge to a regulation but with a three-year course of conduct by several Secretaries and their agents at various levels of "complex programs that bridge both state and federal bureaucracies," *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 2033, 90 L.Ed.2d 462 (1986), and in the federal courts. Counsel were required to utilize an array of lawyering skills to provide effective relief to a 23,000–member statewide class: drafting notices to class members, press releases and other media announcements; fielding inquiries from class members and other attorneys; and monitoring the government's compliance with the preliminary injunction and numerous, complex supplemental remedial orders. In this respect, then, *ASH* is simply not relevant.

■ Consequently, based on the record before it, the Court finds that the limited availability of qualified attorneys for the proceedings involved constitutes a special factor compelling a waiver of the $75 ceiling and an award of the hourly rates sought by Dawson, McKinney and Carter. It also finds waiver of the ceiling warranted by the contingency nature of the case, *LaDuke v. Nelson,* 762 F.2d 1318, 1333 (9th Cir.1985) (and cases cited therein), the successful results obtained, *Local 3–98, Int'l. Woodworkers of America v. Donovan,* 580 F.Supp. 714, 717 (N.D.Cal.1984), *aff'd in part, rev'd in part,* 769 F.2d 1388 (9th

Cir.1985), and the quality of representation. *ASH*, 724 F.2d at 218.

## B. *EAJA Fee Counsel Schwartz*

█ Again relying on subsection 2412(d)(2)(A)(ii), the Secretary objects to the $94.09 hourly rate sought by Hahn, Loeser's Schwartz for his work on plaintiffs' EAJA fee application. Schwartz's affidavit establishes that his regular billing rate as a Hahn, Loeser senior associate is $115 per hour, reflecting prevailing Cleveland market rates. Unlike Legal Aid counsel, Schwartz makes no claim that any statutorily-authorized "special factor" justifies payment at more than $75 per hour. Instead he asserts that a comparison of the cost of living in June, 1985 with that in October, 1981 (the effective date of the EAJA) requires an adjustment of 25.45 percent to the hourly cap of $75, yielding an hourly rate of $94.09.

The government's claim that a cost-of-living increase is permitted only in cases which dragged on for year after year is unsupported by the case law. Its objection to Schwartz's request, however, finds some support in *Chipman*. Discussing subsection 2412(d)(2)(A)(ii), the Sixth Circuit stated:

> Plaintiff's first argument is that the district court erred in refusing to augment the $75 statutory hourly rate by a factor representing the rise in the cost of living since the enactment of the EAJA. In this regard, we think it important that the $75 statutory rate is a ceiling and not a floor. Moreover, we note that Congress, *in reenacting 28 U.S.C. § 2412(d) on August 5, 1985,* did not raise the $75 maximum hourly rate despite the rise in the cost of living since its original enactment in 1980. *See* Pub.L. No. 99–80, § 6, 99 Stat. 186 (1985). Accordingly, we do not believe the district court abused its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA.

781 F.2d at 547 (emphasis added).

*Chipman* leaves open the question of whether this Court would abuse *its* discretion by applying a cost-of-living multiplier to award Schwartz the rate he seeks. Plaintiffs argue that, in addition, the court of appeals' discussion of the cost-of-living issue was incorrect *dicta*. While persuaded that the judgment in *Chipman* rested on grounds other than the court's analysis of the cost-of-living provision, this Court is nonetheless obliged to defer to Sixth Circuit *dicta* unless clearly persuaded that the court erred.

In support of such a conclusion, plaintiffs rely on the lengthier analysis of the 1985 EAJA legislation set forth in *Hirschey v. F.E.R.C.*, 777 F.2d 1 (D.C.Cir. 1985):

> We reject the [government]'s argument that recent amendments to the EAJA, which did not alter the $75 fee limit, compel us to regard that amount as fully compensatory and deny a cost-of-living increase. First, the original enactment of EAJA applies to this case. Second, even if the amendments applied, they do not alter any aspect of 28 U.S.C. section 2412(d)(2)(A). The provision for a cost-of-living increase remains unchanged and therefore applies as it did originally. Consequently, we approve a cost of living increase in the statutory cap to $89.73.

*Id.* at 5 (footnotes omitted). The court noted that the 1985 legislation was *not a "reenactment of the EAJA, but ... actually a series of amendments, including one that repeals the sunset provision that caused 28 U.S.C. § 2412(d) to expire October 1, 1984."* *Id.* at 5 n. 22 (emphasis added). *See also Holden v. Heckler*, 615 F.Supp. at 687 n. 2.

The *Hirschey* court's analysis of recent legislative history and its conclusion that the 1985 EAJA legislation did not constitute a "reenactment" of the statute are persuasive. Since *Chipman's* suggestion that Congress "reset the clock" on cost-of-living increases to the $75 ceiling rests on an incorrect assumption that the EAJA was reenacted, this Court is constrained to conclude that *Chipman's* dicta is flawed and that the *Hirschey* approach should be fol-

lowed. It would therefore not constitute an abuse of discretion to award Schwartz an hourly rate including a cost-of-living increase, assuming he meets the other statutory requirements.

Here the undisputed facts establish that Schwartz's billing rate during the relevant period was the prevailing market rate of $115 and that the applicable cost-of-living increase is 25.45 percent. The $94.09 hourly rate sought thus reflects the increase in the cost of living yet falls below Schwartz's usual hourly rate. Under these circumstances, an increase to the ceiling is warranted and Schwartz will be awarded fees at an hourly rate of $94.09.

## C. *Law Clerks and Paralegals*

■ On the issue of the appropriate hourly rate for Legal Aid and Hahn, Loeser law clerks and paralegals, the Court is confronted with a choice between plaintiffs' suggested hourly rate of $30 and the Secretary's contention that the EAJA permits compensation only for the actual salary paid to these individuals. The case law is divided and there is no Sixth Circuit ruling precisely on point. *Ashton v. Pierce*, 580 F.Supp. 440 (D.D.C.1984), held that law clerk hours were not compensable as attorneys' fees under the EAJA, but several cases have awarded market rates for paralegals and law clerks. *Hoopa Valley Tribe v. Watt*, 569 F.Supp. 943, 947 (N.D.Cal. 1983); *NAACP v. Donovan*, 554 F.Supp. 715, 719 (D.D.C.1982); *Alexander v. Hill*, 553 F.Supp. 1263, 1266 (W.D.N.C.1983).

Absent controlling precedent, this Court draws particular guidance from Judge McMillan's rulings on EAJA issues in another medical improvement case. *Hyatt v. Heckler*, 586 F.Supp. 1154 (W.D.N.C.1984), *vacated on other grounds*, 757 F.2d 1455 (4th Cir.), *on remand*, 618 F.Supp. 227 (W.D.N.C.1985). The court awarded fees for services of a paralegal and three law students at a rate of $25 per hour, 586

F.Supp. at 1158, and later awarded fees for services of a paralegal and two law students at a rate of $30 per hour, 618 F.Supp. at 233. This Court will follow *Hyatt* and approve a rate of $30 per hour as appropriate for the Legal Aid and Hahn, Loeser paralegal and law clerk services.[5]

## D. *Toll-Free Telephone Line*

■ The final disputed issue with respect to hourly rates concerns the Secretary's contention that attorneys should be compensated at paralegal rates for eighteen hours spent answering the toll-free telephone hotline established to provide information to class members. The Secretary finds "no justification for attorneys working on this case to have handled these telephone calls at all, much less that those attorneys whose expertise and services plaintiffs deem to be most valued to have responded to a large percentage of the calls." Defendant's Brief in Opposition to Plaintiffs' Application for Attorneys' Fees ("Defendant's Brief") at 14. This argument is not without superficial appeal: skilled attorneys being paid high rates because of their unique talents should not receive full compensation for purely ministerial duties. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.").

On consideration, however, the Secretary's argument ignores the purpose of the toll-free hotline and the need for it to be staffed by counsel. The history of this case establishes that answering questions from class members, their attorneys, and other interested parties required a detailed knowledge of the social security disability system. Further, it required familiarity with complex procedural issues that arose in this case, particularly after the partial stay pending appeal entered on May 29, 1984, *Holden v. Heckler*, 584 F.Supp. at 503–504, divided the plaintiff class into sub-

---

**5.** Some additional guidance in this area may be derived from *Louisville Black Police Officers Organization, Inc. v. City of Louisville*, 700 F.2d 268 (6th Cir.1983). Reviewing the district court's award of fees under the Civil Rights Attorney's Fees Act of 1976, amending 42 U.S.C.

§ 1988, the court of appeals left standing a determination that $20 per hour was an appropriate rate for work performed by law students in 1975 and 1977. Inflation during the intervening years more than justifies a slightly higher rate for work performed in 1984 and 1985.

classes, one entitled to immediate relief and the other temporarily barred from it. The hotline also enabled class counsel to monitor compliance with the Court's orders and to determine the effectiveness of notice to class members. Compliance and notice were crucial issues during the remedial phase of this action, prompting numerous hearings and status calls before the Court. Accordingly, counsel will be compensated at their full hourly rate for the handful of hours they spent answering the toll-free telephone line.

## III. COMPENSABLE HOURS

The government proposes a ten or twenty percent reduction in the number of hours for which plaintiffs' counsel should be compensated. It asserts that the five attorneys duplicated efforts and devoted excessive time to the tasks that arose during the main case and during preparation of the EAJA fee application. It argues that Legal Aid counsel should not be compensated for their activities prior to the filing of the *Holden* complaint. And it objects to any award for hours during which counsel conferred with plaintiffs' counsel in the numerous other medical improvement class actions that were being litigated simultaneously. Reviewing these claims, the Court applies to the EAJA the methodology developed for assessing claims under the Civil Rights Attorneys' Fees Awards Act of 1976, amending 42 U.S.C. § 1988, and other similar fee statutes. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th

Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *see also Kelley v. Metropolitan County Board of Education*, 773 F.2d 677 (6th Cir.1985), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986); *Louisville Black Police Officers Organization, Inc. v. City of Louisville*, 700 F.2d 268 (6th Cir.1983). Specifically, the Court follows two prescriptions set forth in *Northcross:*

> [H]ours may be cut for duplication, padding or frivolous claims. In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services.... Such an approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative.
>
> Beyond this allowance to duplicative services, however, we hold that if a district court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination.

611 F.2d at 636–37 (citation omitted).

### A. *Duplication*

■ The Secretary's most persuasive argument is that on occasion plaintiffs' five attorneys unnecessarily duplicated each other's efforts. Reviewing the time records produced in the appendices to the fee application, the Secretary produced an illustrative list of chores which involved multiple attorneys, often with lengthy meetings among the different counsel.[6]

---

**6.** The Secretary's summary is found in Defendant's Brief at 8 n. 4:

The following analysis demonstrates the duplicative and excessive expenditure of attorney time. It is not meant to be ex[h]austive or all-inclusive since some attorney time items are too vague for inclusion. Some of the undertakings are as follows: class certification brief, 4 attorneys, 11.4 hours; preparation for class certification hearing, 4 attorneys, 36.30 hours; preliminary injunction brief, 5 attorneys and 1 paralegal, 54.6 hours including 8.2 hours for meeting; preparation for preliminary injunction hearing, 5 attorneys and 1 paralegal, 45.4 hours; post-trial brief, 4 attorneys and one paralegal, 43.8

hours; reply brief, 4 attorneys and one paralegal, 15.1 hours; stay brief, 4 attorneys and one paralegal, 54.6 hours; preparation for hearing on stay, 3 attorneys, 19.6 hours; post-hearing brief on stay, 3 attorneys, 8.4 hours; notice preparation, 4 attorneys, 31.3 hours including 10.1 hours for meetings; preparation for hearing on notice, 4 attorneys, 19.0 hours including 2.5 hours for meeting; order and 7(b), 7(c) submission, 4 attorneys, 31.4 hours including 4 hours for meeting; June 1984 motion for stay, 4 attorneys, 13.1 hours including 5.2 hours for meeting; second notices, 4 attorneys, 41.9 hours including 11 hours for meeting; appeals process, 3 attorneys, 27.8 hours including 10.7 for meetings;

Plaintiffs do not challenge the accuracy of the summary, but defend their efforts by reviewing the labors required to produce each of the key pleadings in the case.

As explained in the preliminary injunction opinion, this action commenced with the filing of *Brest v. Heckler*, No. C83–4893 (N.D.Ohio filed Dec. 14, 1983). Attorneys at Kelley, McCann, appointed by the Court to represent *pro se* plaintiff Gerald Brest, consulted Legal Aid attorneys, who assisted in drafting an amended complaint in *Brest*, attended the first status conference in *Brest*, and then filed the *Holden* complaint. Eventually the cases were consolidated and *Holden* was certified as a class action. *See Holden v. Heckler*, 584 F.Supp. at 466–67, 489. Both Kelley, McCann and Legal Aid attorneys were designated as class counsel. *Id.* at 489.

Plaintiffs begin their defense of their labors on the case with a discussion of the amended *Brest* complaint and *Holden* complaint: "As there were no model pleadings for the complaints which plaintiffs could pull from the shelves, the complaints were essentially drafted from scratch." Plaintiffs' Reply to Brief and Supplemental Brief of Defendant in Opposition to Plaintiffs' Application for Attorneys' Fees at 19–20. Likewise, they contend that their preliminary injunction pleadings required research and drafting of complicated and important jurisdictional and substantive issues, as did later pleadings concerning the partial stay pending appeal and summary judgment motions.

It is undisputed that certain portions of this case involved novel questions and issues of first impression. The stay motion, for example, was governed by several just-issued Supreme Court and Sixth Circuit cases: *Heckler v. Lopez*, 466 U.S. 955, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984); *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984); and *Haynes v. Secretary of Health*

*and Human Services*, 734 F.2d 284 (6th Cir.1984). Likewise, the remand and summary judgment motions involved interpretation of the newly-enacted Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984). It does not follow from this, however, that claims of originality and novelty justify every man-hour devoted to plaintiffs' pleadings. The contention that the *Brest* and *Holden* complaints were drafted "from scratch," for instance, is troubling in several respects. Initially, the "from scratch" argument rings hollow in light of the large number of medical improvement class actions which were already being litigated, decided and appealed (all the way to the Supreme Court) at the time *Brest* and *Holden* were filed. *See, e.g., Mental Health Ass'n. of Minnesota v. Heckler*, 720 F.2d 965 (8th Cir.1983); *Kuehner v. Schweiker*, 717 F.2d 813 (3d Cir.1983), *vacated and remanded*, 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Hyatt v. Heckler*, 579 F.Supp. 985 (W.D.N.C.1984), *vacated* 757 F.2d 1455 (4th Cir.1985), *on remand*, 618 F.Supp. 227 (W.D.N.C.1985); *City of New York v. Heckler*, 578 F.Supp. 1109 (E.D.N.Y.), *aff'd*, 742 F.2d 729, (2d Cir.1984), *reh'g denied*, 755 F.2d 31 (2d Cir.1985), *aff'd*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Trujillo v. Heckler*, 558 F.Supp. 1058 (D.Colo.1983). While none of those cases involved Sixth Circuit disability law or the factual history of the Secretary's conduct in Ohio, the underlying issue—the Secretary's duty to follow circuit court rulings on the medical improvement standard—was the same. In other words, to the extent that pleadings from other cases were not consulted in preparing the *Brest* and *Holden* complaints, they should have been; to the extent they were, the plaintiffs' pleadings were not "from scratch." Similarly, plaintiffs cite the myriad legal issues, jurisdictional and substantive, raised by the preliminary injunction motion. Again, with the exception of the precise scope of Sixth Circuit medical improvement

---

motion to show cause, 3 attorneys, 18.3 hours; consent order, 4 attorneys, 27.9 hours; motion for summary judgment, 2 attorneys, 64.0 hours; remand brief, 2 attorneys, 12.5 hours; preparation of objections/notices, 2 attorneys, 20.9 hours; reply to motion to dismiss, 3 attorneys, 10.1 hours.

law, these issues had been litigated in the earlier class actions, and the earlier decisions obviated the need for research and drafting "from scratch." Finally, any suggestion that all research and writing during the early phases of this case was done "from scratch" is inconsistent with the record documentation of close and frequent contacts between plaintiffs' counsel and class counsel in other cases, and with plaintiffs' assertions concerning the value of those communications. *See infra* at 1051–52.

In short, while the Court should not second-guess the decisions of counsel on staffing and strategy, it must conclude that some of the efforts of the five attorneys during the case-in-chief were duplicative. No such showing has been made by the Secretary with respect to the work on the fee application. Accordingly, pursuant to *Northcross,* this Court will impose an across-the-board reduction on hours devoted by attorney to the case-in-chief.

Some guidance on the appropriate amount of that reduction is available in earlier cases. In *Hensley v. Eckerhart,* the Supreme Court approved a thirty percent overall reduction where the attorneys failed to keep contemporaneous time records, and also multiplied proceedings because of their inexperience. 461 U.S. at 428, 103 S.Ct. at 1936. Similarly, in *Kelley v. Metropolitan Board of Education,* the Sixth Circuit sustained a ten percent reduction imposed by the district court to account for duplication of services and possible miscalculations in the attorneys' reconstruction of their time records. 773 F.2d at 683. Neither situation is replicated here. Rather, to a very minor degree, plaintiffs' counsel seek compensation for work "from scratch" that did not require reinvention of the wheel, utilized slightly more hours than were necessary to prepare certain pleadings, and otherwise manifested the inevitable consequences of having two law offices with five thorough attorneys handling one case. Because the situations in *Hensley* and *Kelley* are not repeated here, the Secretary's suggestion of a ten or twenty percent across-the-board reduction is inappropriate. Rather, the hours claimed by the attorneys for their work on the case-in-chief will be reduced by five percent. No duplication having been shown for work on the EAJA fee application, no reduction will be imposed concerning that work.

B. *Legal Aid Work Prior to Filing Holden*

■ Pursuant to the other prong of *Northcross,* the Secretary urges that no fees be awarded for work by Legal Aid attorneys on the *Brest* case prior to filing *Holden.* From November, 1983, when Valponi contacted Legal Aid about Kelley, McCann's appointment to the *Brest* case, to February, 1984, when *Holden* was filed, the Legal Aid attorneys consulted with Valponi, discussed *Brest* with colleagues and superiors, interviewed clients they viewed as possible class representatives, appeared at a status conference in *Brest,* and finally filed *Holden.*

The Secretary cites no cases in support of its view that Legal Aid's pre-*Holden* work should be "characterized as gratuitous assistance and non-compensable." Defendant's Brief at 3. A contrary, and appropriate, conclusion appears in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *aff'd in part, remanded in part on other grounds,* 746 F.2d 4 (D.C. Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). There plaintiffs sought compensation for work performed by an attorney who had prosecuted a similar class action against another airline. His duties included pre-trial preparation of witnesses, examination of witnesses at trial, and counseling on trial issues. The court held that "[t]he fact that [counsel] was not formally retained by Plaintiffs and was not paid for his work is irrelevant; it does not obliterate the value of his services, nor does it require the Plaintiffs to be compensated for his time at anything less than its full market value." *Id.* at 365 (footnote omitted). Applying these principles, the Legal Aid counsel are entitled to compensation for their work prior to filing *Holden.*

## C. *"Nontraditional Activities" of Legal Aid Counsel*

 Lastly, the Secretary objects to compensation for time spent by Dawson consulting with class counsel in other medical improvement cases, preparing an article about *Holden* for the Law Reform Bulletin and a memorandum about the case for a Federal Bar Association seminar, and corresponding with members of the Ohio congressional delegation. Similar activities by other counsel are challenged but not specified, on the grounds that all such conduct by counsel was outside of their role representing the plaintiff class in *Holden.* But the Secretary has failed to demonstrate which conversations were unrelated to the merits of the case, nor has he presented evidence contrary to Dawson's deposition testimony about the value of his "nontraditional activities" to the plaintiff class. Dawson testified that the articles he wrote assisted individual attorneys representing class members with implementing the Court's orders, and that his letters made information about the case available to congressional assistants who deal frequently with disability claimants. The record is devoid of contrary facts. Thus, even if inclined to challenge hours allegedly spent on work outside the narrow scope of "litigating" this case, the Court could not "identify those hours and articulate its reasons for their elimination." *Northcross,* 611 F.2d at 637. No hours will be stricken from the fee application other than those specified in Part III–A, *supra.* Cf. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (upholding fee award for "nontraditional" legal work necessary to attain adequate relief under Clean Air Act.)

## IV. COSTS

The final issue concerns the costs, fees (other than attorneys' fees) and expenses claimed by the plaintiffs. Resolution requires consideration of three EAJA provisions. Title 28 U.S.C. § 2412(a) provides in part:

[A] judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.[7]

Subsection 2412(d)(1)(A) then provides that when an award under the EAJA is appropriate:

[A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a) . . .

And subsection 2412(d)(2)(A) provides in part:

"[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees . . .

 The Secretary agrees that plaintiffs are entitled to costs for photocopying

---

7. Title 28 U.S.C. § 1920 provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

and deposition costs and expenses; he disputes plaintiffs' claim for long distance telephone costs, messenger service, mailing costs, computer-assisted legal research, travel costs, and the toll-free telephone number. The last issue is resolved most easily. The toll-free telephone line was installed and maintained pursuant to an order of the Court, and therefore falls clearly within the language of subsection 2412(d)(2)(A).

As for the remaining disputed items, the case law is divided on the scope of subsection 2412(d)(2)(A). Several courts, viewing the enumerated items of the subsection as an exclusive list of compensable fees and expenses, have held that overtime meals, car and local transportation costs, filing, wrapping and postage, and miscellaneous costs are not available under the EAJA. *See ASH,* 724 F.2d at 224; *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348, 353 (D.D.C.1982) (citing *Norman v. United States,* 74 F.R.D. 637, 639 (D.Del.1977)). But another interpretation is that "[t]he statute defines 'other expenses' by example, rather than by limitation," and

> that "other expenses" includes the reasonable expenses of long-distance telephone charges and travel incurred by plaintiff's counsel because these are items normally charged to clients as legal expenses. The purpose of the Act was to lower the financial barriers to litigation against the government by parties without substantial private resources by compensating prevailing parties for fees and expenses which they would otherwise be forced to bear....

*Hoopa Valley Tribe v. Watt,* 569 F.Supp. at 947–48 (citing *Northcross,* 611 F.2d at 639). The Ninth Circuit has approved this reading of subsection 2412(d)(2)(A), agreeing that the listed items are illustrative, not exclusive, and noting that such costs "are routine under all other fee statutes." *Int'l. Woodworkers of America, AFL–CIO, Local 3–98 v. Donovan,* 769 F.2d 1388, 1392 (9th Cir.1985).

As reflected by the *Hoopa Valley Tribe* court's citation to *Northcross,* the more expansive interpretation of the EAJA conforms to the Sixth Circuit's pronouncements concerning 42 U.S.C. § 1988. In *Northcross* the court held:

> The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.

611 F.2d at 639. This interpretation is appropriately applied to subsection 2412(d)(2)(A). Accordingly, all costs sought by the plaintiffs are approved.

## V.

Pursuant to the preceding discussion, the following attorneys' fees, costs and expenses will be awarded:

Adjusted Attorneys' Fees
Through May 20, 1985

Fees

Hours (Reduced by 5 Percent for Attorneys)

| | Hours | × Rate | = Amount |
|---|---|---|---|
| Mark Valponi | 328.8 | $75 | $ 24,660.00 |
| John Habat | 52.3 | $65 | 3,399.50 |
| David Dawson | 850.0 | $125 | 106,250.00 |
| Louise McKinney | 238.2 | $100 | 23,820.00 |
| Carolyn Carter | 269.2 | $125 | 33,650.00 |
| Dean della Volpe (Law student) | 115.1 | $30 | 3,453.00 |
| Toll-free number answering | 59 hours, 1 min. | | 3,283.16 |
| | Subtotal fees: | | $198,515.66 |

Total Attorneys' Fees
 Through May 20, 1985 $198,515.66
 After May 20, 1985 35,556.30
 $234,071.96

Total Costs and Expenses
 Through May 20, 1985 $ 4,171.12
 After May 20, 1985 3,441.57
 $ 7,612.69

Total Attorneys' Fees, Costs and Expenses $241,684.65

## IT IS THEREFORE ORDERED:

(1) That the reasonable value of the services rendered by plaintiffs' counsel which are properly taxable under the Equal Access to Justice Act is $234,071.96.

(2) That the sum of $234,071.96 shall be paid to plaintiffs by the United States as counsel's full and only fee for representing plaintiffs in this civil action.

(3) That the United States shall also pay to plaintiffs the plaintiffs' costs and expenses of $7,612.69.

IT IS SO ORDERED.