**Billie J. CHIPMAN, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 85–5575.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1985.

Decided Jan. 16, 1986.

Rehearing and Rehearing En Banc Denied March 21, 1986.

Eugene C. Gaerig, argued, Memphis, Tenn., for plaintiff-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Alice Howze, argued, Memphis, Tenn., Christine Bradfield, Holly Grimes, Atlanta, Ga., for defendant-appellee.

Before MILBURN and GUY, Circuit Judges, and WOODS, District Judge *.

MILBURN, Circuit Judge.

In this action for disability benefits under the Social Security Act, plaintiff appeals from two orders of the district court. First, plaintiff argues the court erred in determining the amount of attorney fees for which the Secretary is liable under the Equal Access to Justice Act ("the EAJA"), 42 U.S.C. § 2412. Second, plaintiff argues the district court erred in refusing to award post-judgment interest as to the award of past-due disability benefits. For the reasons that follow, we affirm.

## I.

Plaintiff filed her application for Social Security benefits on March 12, 1974, and was awarded disability benefits. In August, 1978, however, the Secretary determined that plaintiff had attained the ability to engage in substantial, gainful activity and terminated her disability payments. Plaintiff thereafter filed a request for a hearing claiming that her disability had not ceased and also filed an application for supplemental security income. Following a hearing before an Administrative Law Judge ("ALJ"), plaintiff's disability benefits were reinstated.

In January, 1982, plaintiff's benefits were again terminated after the Secretary determined that plaintiff's disability had ceased in December, 1981. A hearing was conducted following which the ALJ held that plaintiff's disability had ceased. Following affirmation by the Appeals Council, plaintiff filed the present action in the district court on July 5, 1983. On September 13, 1984, the district court, rejecting the recommendations of the magistrate, reversed the decision of the Secretary and ordered that benefits be reinstated.

On September 24, 1984, plaintiff filed a petition for attorney fees under the EAJA. On November 19, 1984, plaintiff, having yet to be paid her past-due disability benefits, filed a motion to require the Secretary to pay the judgment. On January 9, 1985, the district court granted plaintiff's motion and required the Secretary not only to pay the judgment, but also to pay interest on the judgment previously entered on September 13, 1984.

In support of her request for $100 per hour attorney fees, plaintiff submitted evidentiary evidence from another Social Security case in which her attorney represented the claimant therein. On February 21, 1985, the district court approved the application for the award of fees under the EAJA upon a finding that the position of the Secretary was not substantially justified. However, the district court refused to award fees in excess of $75 per hour.

On June 7, 1985, the district court granted the Secretary's motion for relief from judgment as to the post-judgment interest previously awarded. The court held that such an award could not be granted because of sovereign immunity.

## II.

A. *Attorney Fees*

The Equal Access to Justice Act provides, in pertinent part, that:

---

* The Honorable George E. Woods, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

■ As an initial matter, we note the Secretary has challenged the admissibility of plaintiff's evidence supporting her request for an enhanced fee. However, having failed to timely object to the evidence, the Secretary is precluded from raising this argument. *See* Fed.R.Evid. 103.

■ Plaintiff's first argument is that the district court erred in refusing to augment the $75 statutory hourly rate by a factor representing the rise in the cost of living since the enactment of the EAJA. In this regard, we think it important that the $75 statutory rate is a ceiling and not a floor. Moreover, we note that Congress, in reenacting 28 U.S.C. § 2412(d) on August 5, 1985, did not raise the $75 maximum hourly rate despite the rise in the cost of living since its original enactment in 1980. *See* Pub.L. No. 99–80, § 6, 99 Stat. 186 (1985). Accordingly, we do not believe the district court abused its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA.

■ In support of her remaining arguments for an increase in the hourly rate, plaintiff's counsel relies upon the brief and the record submitted to this panel in the case of *Hamric v. Secretary of Health and Human Services*, No. 85–5236 (filed March 19, 1985). Accordingly, from our unpublished per curiam decision filed simultaneously with this decision, we adopt the following:

Plaintiff's primary argument is that the district court erred in refusing to find that a higher hourly rate was justified because of the limited availability of attorneys in the Memphis area qualified in the representation of Social Security claimants. The EAJA specifically provides this as a factor to be considered....

\*  \*  \*  \*  \*  \*

Although the Secretary put forth no direct evidence, counsel established on cross-examination that Mr. Donatti, plaintiff's witness, conducted a seminar on Social Security law attended by some sixty attorneys and that approximately 20% of those attorneys subsequently contacted Mr. Donatti for follow-up questions. This testimony supports a finding that there are in fact an adequate number of attorneys in the Memphis area willing and competent to represent Social Security claimants. Furthermore, this testimony rebutted plaintiff's evidence that there are only six to ten such attorneys....

Plaintiff next argues that the evidence shows that Social Security is a specialized area of the law requiring a great deal of study. However, the Supreme Court has stated that "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment...." *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984). We find this statement, made in the context of 42 U.S.C. § 1988, to be fully applicable to the EAJA.

Plaintiff further argues that the evidence shows that the customary hourly rates for attorneys, such as [hers], with fifteen years of experience handling Social Security cases from 1980 to 1984 range from $100 to $200. However, Congress has expressed clearly its intention that prevailing market rates are relevant only up to $75 per hour. Therefore, customary rates above $75 per hour cannot support a claim in excess of the statutory maximum rate. *See Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 216–

17 (D.C.Cir.1984) ("In enacting this fee limitation, Congress attempted to provide full market compensation for successful litigants while, at the same time, containing costs."); *Hyatt v. Heckler,* 586 F.Supp. 1154, 1158 (W.D.N.C.1984), *vacated on other grounds,* 757 F.2d 1455 (4th Cir.1985).

Plaintiff's final argument is that the evidence demonstrates that Social Security is one of the least attractive areas for trial lawyers. Although this evidence may be probative as to plaintiff's assertion that there are few available attorneys and is therefore relevant to plaintiff's first argument, we do not believe it provides an independent justification for an award of a higher hourly rate. *See Hyatt v. Heckler, supra,* 586 F.Supp. at 1158.

## B. *Post-Judgment Interest*

■ Plaintiff's second major assignment of error is that the district court erred in holding that sovereign immunity barred the assessment of post-judgment interest against the Secretary. The general rule is that the United States is not liable for interest unless it is expressly authorized by contract or statute. *Bituminous Casualty Corp. v. Lynn,* 503 F.2d 636, 643 (6th Cir. 1974). However, a "well defined" exception to this general rule exists when:

> the United States embarks on a business venture with the power to "sue and be sued." In those cases it has been held that the United States has placed itself on an equal footing with private parties, including the usual incidents of suits.

*Lynn,* 503 F.2d at 643.

To resolve the present case, we need go no further than to hold that, in enacting the disability insurance program of the Social Security system, the United States did not embark on a "business venture." In so holding we are aware that the disability program has some attributes similar to the insurance program at issue in *Lynn.* For example, the Federal Disability Insurance Trust Fund ("the Fund") is obligated to repay interfund borrowing with interest,

*see* 42 U.S.C. § 401(b) and (1). Further, the Fund is, if not in practice, at least designed to be, self-supporting through premiums and charges paid by participants and interest on investments, *see* 42 U.S.C. § 401(b) and (d).

In our view, however, these "features of the program that point up its business-like nature," *Lynn,* 503 F.2d at 645, are outweighed by those characteristics of the program which are decidedly not business-like. First and foremost, the fact that participation in the Social Security program is mandatory sets it apart from the reinsurance program at issue in *Lynn* and casts the disability program more in the nature of a traditional governmental function as opposed to a business venture. The contributions by participants in the Social Security system are thus more logically viewed as taxes than premiums.

Second, the Department of Health and Human Services does not issue policies that are "standard form [insurance] contracts" providing "that claims shall be paid promptly." *Lynn,* 503 F.2d at 645. This also distinguishes the present case from *Standard Oil Co. v. United States,* 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925), wherein the Court held the Bureau of War Risk Insurance liable for interest based in part on its observation that the policies issued by the Bureau promised claims would be paid within thirty days after the filing of a proof of loss.

In sum, we do not view Social Security as a program in which Congress has established an agency and "authorize[d] it to engage in commercial and business transactions with the public." *Lynn,* 503 F.2d at 644 (quoting *Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). The disability program of the Social Security system is not akin to a private venture; the Secretary is not "in the business of selling insurance." *Lynn,* 503 F.2d at 645. Accordingly, we hold that the statutory grant of the right to claimants to bring suit against the Secretary does not, by implication, waive

the Secretary's sovereign immunity from liability for post-judgment interest.

## III.

For the reasons stated, the judgment of the district court is AFFIRMED in all respects.