Bradley James JOHNSON, et
al., Plaintiffs,

v.

Edwin MEESE, et al., Defendants.

Civ. A. No. 78–71747.

United States District Court,
E.D. Michigan, S.D.

Feb. 27, 1987.

Martin Geer, Paul Reingold, Ann Arbor, Mich., for plaintiffs.

Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

On September 4, 1986, this court issued a memorandum opinion and order finding that the U.S. Government's position in this case was not substantially justified. Such a finding is necessary for a court to award fees to a prevailing party other than the United States. 28 U.S.C. § 2412(d)(1)(A). The court granted the plaintiff's motion for fees and costs and ordered plaintiffs' counsel to submit affidavits detailing their expenses. This petition is now before the court.

This class action was filed in 1978 against various federal defendants alleging systematic violations of the Youth Corrections Act, 18 U.S.C. § 505 *et seq.* After a trial by magistrate, this court reviewed the magistrate's report and recommendation and offered its own opinion. The court found that the plaintiffs prevailed on the following issues:

(1) The Bureau of Prisons has created "a generalized, forced and uninformed classification and placement" system of youthful offenders;

(2) The Bureau has not followed congressional will which mandated segregating youth offenders;

(3) The Bureau offered rehabilitation programs to all inmates without offering special programs to youth offenders, thereby also contravening congressional intent;

(4) The Parole Commission was in error because it gave "no different consideration to YCA offenders then it does to adult offenders."

On appeal, the Sixth Circuit affirmed in part and reversed in part. *Martin v. Attorney General of the United States,* 771 F.2d 102 (6th Cir.1985). According to this ruling, the plaintiffs only prevailed on issues (1)-(3), the appellate court finding that Parole Commission practices were within the ambit of the Youth Corrections Act.

### I. Hourly Rates

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(A)(i), requires the payment of "reasonable attorneys fees ... (based upon prevailing market rates for the kind and quality of the services furnished ...)." The Act also requires that "fees shall not be awarded in excess of $75.00 *per* hour unless the court determined that an increase in the cost-of-living or a special factor such as the limited availability of qualified attorneys for the proceedings involved, justified a higher fee ..." Section 2412(d)(2)(A)(ii). The plaintiffs contend that several factors necessitate fees calculated at greater than $75 per hour.

### A. Cost of Living

The plaintiffs contend that the cost of living in southeastern Michigan has increased at approximately seven percent per year requiring a cost-of-living increase to $100 per hour. The plaintiffs' reasoning is flawed. First, the plaintiffs do not consider that the bulk of the hours billed in this case came before 1984 and they do not adjust their fees so that the hours reflect

what they were worth in the year they were billed. More importantly, however, the plaintiffs fail to deal with *Chipman v. Secretary of Health and Human Services,* 781 F.2d 545 (6th Cir.1986).

■ *Chipman* involved a request for attorney's fees under the EAJA in a Social Security Act case. The *Chipman* plaintiff had benefits reinstated when a court had reversed a magistrate's finding that the plaintiff's disability had ceased. In the attorney fee petition, the plaintiff asked for a rise in the statutory rate to reflect an increase in the cost of living. The Sixth Circuit panel rejected this theory:

> In this regard, we think it important that the $75 statutory rate is a ceiling and not a floor. Moreover, we note that Congress, in reenacting 28 U.S.C. § 2412(d) on August 5, 1985, did not raise the $75 maximum hourly rate despite the rise in the cost of living since its original enactment in 1980. *See* Pub.L. No. 99–80, 6, 99 Stat. 186 (1985). Accordingly we do not believe the district court abused its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA.

*Chipman,* 781 F.2d at 547. Although the plaintiffs here challenge the court's reasoning in *Chipman,*[1] they do not persuasively distinguish the case. Because the court finds *Chipman* strongly suggestive,[2] no adjustment to the statutory cap will be made for inflation.

### B. Special Factors

The plaintiffs also suggest that the hourly rate should be increased because of special factors. First, they argue that there are few qualified attorneys willing to do prison litigation because of its specialized nature and unsavory character. Second, they contend that the case was extremely complicated. Third, they argue that lawyers in this area with comparable expertise receive remuneration in the range of $120–150 per hour. Fourth, they argue that the case drained the Legal Services Corporation of Southeastern Michigan of necessary resources. Finally, they argue that the risk of non-recovery was extremely high.

Under § 2412(d) limited availability of lawyers is a proper factor to consider. In *Chipman,* the appellate panel treated the question as a factual dispute. After due consideration of the evidence presented, the court found that there were far more attorneys available for social security cases than the plaintiff had indicated. *Chipman,* 781 F.2d at 547. Here, the plaintiffs ask the court to take judicial notice of the fact that there are few lawyers willing to take prison cases.

■ The court cannot take judicial notice of this factor. In a large metropolitan area such as southeastern Michigan, prison litigation is not uncommon. Whether the number of prison litigators is so limited as to require upward adjustment in the statutory cap of the EAJA is a question requiring evidence of a persuasive nature. Because the plaintiffs have not presented any evidence, the court cannot lift the statutory cap on this basis.

■ In regard to the complexity issue, the Sixth Circuit found fully applicable to EAJA awards the Supreme Court's statement in *Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984):

> The novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant upward adjustment ...

*Chipman,* 781 F.2d at 547. Novelty or complexity is therefore not a factor justifying fee enhancement.

---

**1.** Several courts have come to opposite conclusions. *See, e.g., Hirschey v. F.E.R.C.,* 777 F.2d 1, 5 n. 24 (D.C.Cir.1985).

**2.** After *Chipman,* it remains within the trial court's discretion to increase the hourly rate for inflation. However, the strong language in *Chipman* and other recent Sixth Circuit fee cases, *infra* at 273, creates a strong implication that trial courts should refrain from adjusting hourly rates upward on the basis of inflation.

■ *Chipman* also interpreted the EAJA to require the $75 per hour rate even if customary hourly rates for attorneys of similar experience was in the $100–200/hour range. "Congress has expressed clearly its intention that prevailing market rates are relevant only up to $75 per hour. Therefore, customary rates above $75 per hour cannot support a claim in excess of the statutory maximum rate." 781 F.2d at 547. *See also Bunn v. Bowen,* 637 F.Supp. 464, 477 (E.D.N.C.1986). In their Reply Brief, the plaintiffs assert that "where a government policy is challenged on behalf of a class, the rate tends to be adjusted upward." Reply Brief at 2. The court does not find this argument compelling. In *Chipman,* the Sixth Circuit states repeatedly the limiting character of the EAJA's statutory cap. Recently a Sixth Circuit panel interpreting the 1985 amendments to the EAJA stressed that courts should construe strictly and in the government's favor waivers of sovereign immunity embodied in the EAJA or its amendments. *Blackmon v. United States,* 807 F.2d 70, 75 (6th Cir.1986). Even in petitions under the civil rights statutes, the Sixth Circuit has interpreted more liberal fee provisions narrowly: "Congress did not intend that lawyers, already a well-off professional class, receive excess compensation or incentive beyond the amount necessary to cause competent legal work to be performed in these fields." *Coulter v. State of Tenn.,* 805 F.2d 146, 148–49 (6th Cir.1986). Given this Circuit's restrictive reading of fee statutes in general and the EAJA in particular, the fact that the plaintiff class is challenging a governmental policy does not justify an increased hourly rate.

The plaintiffs next contend that the suit monopolized the attention of attorney Martin Geer during his tenure at Legal Services of Southeastern Michigan and afterwards. The plaintiffs do not cite case law where monopolization of attorney time justified an increase in the $75 per hour rate of the EAJA. The Ninth Circuit held this factor could be considered in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975). In *Underwood v. Pierce,* 761 F.2d 1342 (9th Cir.1985), the Ninth Circuit stated that the *Kerr* factors apply to EAJA cases. *See also Bunn v. Bowen,* 637 F.Supp. at 476 (preclusion in the exceptional case justifies increase in hourly rate).

■ Preclusion of employment may be a special factor that should be considered where the case causes hardship to the attorney's practice or to that of the associated law firm. Taking on such a case may cause severe disruption in the normal office routine, totally interrupt the normal development of the attorney's career, and cause neglect of the attorney's other clients. In such a case, an attorney may be loath to accept large scale litigation. In order to encourage attorneys to take on these demanding cases, a court would be justified in awarding a rate above the statutory cap.

■ Close examination of Mr. Geer's billings reveals that this case did not monopolize his time. For example many weeks involved less than a halftime commitment:

| | |
|---|---|
| July 9–July 16, 1978 | 17 hours |
| November 3–November 9, 1978 | 13.3 hours |
| January 22–January 30, 1979 | 19.4 hours |
| February 12–February 19, 1979 | 18 hours |
| August, 1979 | 12 hours |

Of course at other times, the litigation required extended hours. During trial in March and in May, 1979, and during the drafting of proposed findings of fact in June and July of that year, the litigation consumed entire weeks. The court does not believe, however, that these intermittent periods of continuous activity prevented Mr. Geer from working on other matters during other months.

Finally, the plaintiffs claim that the low probability of recovery of any fees mandates a "contingency enhancer" to the hourly rate. In the § 1988 context, the circuits are split on this issue, and the Sixth Circuit has not addressed it recently. *Compare, e.g., Wildman v. Lerner Stores Corp.,* 771 F.2d 605 (1st Cir.1985) and *Laduke v. Nelson,* 762 F.2d 1318 (9th Cir. 1985) with *McKinnon v. City of Berwyn,* 750 F.2d 1383 (7th Cir.1984) and *Laffey v.*

*Northwest Airlines,* 746 F.2d 4 (D.C.Cir. 1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). Last term the Supreme Court left this question open, *Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and has set it for reargument this term. In a recent § 1988 fee opinion, this court approved of this "contingency enhancer" in the § 1988 context where specific evidence shows that "the risk of nonpayment in a particular case was greater than one would reasonably expect an attorney to have to endure." *McCullough v. Cady,* 640 F.Supp. 1012, 1024 (E.D.Mich.1986). Neither party cites case law applying this factor in the EAJA area, although it has been mentioned in some cases. *See e.g., Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211, 218 (D.C.Cir.1984).

■ Even if it does apply, however, the risk of non-payment, while significant, was not large enough here. Bureau officials candidly admitted that they did not adhere to the mandates of the Youth Corrections Act. Therefore, plaintiffs knew from near the beginning of the litigation that they were likely to prevail and that the government's position was not substantially justified. Given the Sixth Circuit's stringent view of the statutory cap, this factor should not lead to a higher hourly rate.

## II. Issues on Which the Plaintiff Prevailed

Under the EAJA, the plaintiffs are entitled to fees on those issues on which they prevailed. The defendants claim at least 25 percent of the plaintiffs' time was expended on parole issues. Because the plaintiff did not prevail on these issues, the defendants claim that the fee award should be reduced by that amount. However, they do not present any evidence that the parole issues took 25 percent of the plaintiffs' time.

■ The plaintiffs argue that where the litigation is complicated, it should be the ultimate result that is considered.

In other cases the plaintiffs' claims for relief will involve a common core of facts and will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where the plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Although *Hensley* is a § 1988 case, the reasoning appears equally applicable to the EAJA context. Most of the work on the parole issues was integral to the litigation and helped clarify issues surrounding treatment of youthful offenders. Some of the work, however, was completely independent of the rest of the litigation and not as helpful in resolving other issues. The court will therefore identify hours spent on the parole issue for each lawyer or law clerk involved and will reduce the hours spent on parole issues by 25 percent.

The defendants argue that much of the work done on the remedial order was duplicative and unnecessary. The court agrees. In particular, the plaintiffs spent much time on arguing for the necessity of a special master for the youthful offender centers and the correctional institutions involved in the litigation. This proposed solution in light of the facts here may be considered at best misguided. It caused needless delay and did not clarify any other issues in the litigation. The court will therefore not award any attorney fees for

work identified with the special master issue. Where the hours are not identified, the court will deduct an appropriate percentage of the time spent on the remedial order. The court now examines the work of each attorney to calculate hours reasonably spent on the litigation.

*Martin Geer*

The government does not contest Mr. Geer's claims regarding the hours spent from the initiation of the litigation through November 26, 1980. The hours spent on this phase of the lawsuit amount to 854.3 hours. The remaining hours amount to 1405.7 hours. The court will deduct 25 percent of these hours to account for the parole and special master issues.

*Peter Sandman*

The government also does not contest that the case required experienced co-counsel. Mr. Sandman will therefore be compensated for the entire 35 hours claimed.

*John O'Toole*

Mr. O'Toole is the Director of the National Youth Law Center. His involvement began after the trial during the writing of the remedial order. He also participated in certain issues surrounding the Parole Commission claims. The court will deduct 61 hours for time spent on the special master and parole issues.

*James Morales*

Mr. Morales is a staff attorney from the National Youth Law Center. He and O'Toole worked on identical issues as well as participating in the special master and parole issues. Some of his work appears to duplicate that of O'Toole's work. Because O'Toole was apparently the lead lawyer on the issues worked on by the Center, the court makes appropriate deductions for the duplicative work of his associate. Also, the 43.8 hours spent reviewing the case appears excessive. The court therefore reduces Mr. Morales' hours by 312.7 hours.

*Paul Reingold*

The government contests Mr. Reingold's claims only by arguing that fees for preparing a fee petition should be limited to five percent of the total award. *Coulter v.*

*State of Tenn.*, 805 F.2d at 151. Since his claims do not rise to this level, the court grants the entire amount.

*Law Clerks*

The National Youth Law Center attorneys used law clerks extensively. Much of the work done by the clerks involved the parole and special master issues. Several law clerks also worked on attorney fee issues early on in the litigation. Although this work on attorney fees may have contributed to the present petition, it appears excessive to the court. Much of the case law cited in the present petition developed well after these clerks completed their research. The court therefore makes appropriate deductions. The plaintiffs have failed to detail Scott Sinder's hours, and therefore the court will reduce his hours by 50 percent.

| | |
|---|---|
| Sandra Schupont | 9.5 hours |
| Beth Edwards | 12.5 hours |
| Daniel Martinez | 8.5 hours |
| Ken Alex | 150 hours |
| Chris Wu | 10 hours |
| Darryl Parker | 10 hours |
| Janice Pierponi | 10 hours |
| Scott Sinder | 3.5 hours |
| | 214 hours |

*Costs*

The defendants do not protest the costs delineated by the plaintiffs. The travel listed by the plaintiffs appears to the court somewhat excessive. The plaintiffs make no showing that both Mr. Morales' and Mr. O'Toole's presence was necessary at the various negotiations and conferences they attended. The court, therefore, reduces the travel cost by one trip in each case. The court awards the following costs:

| Staff Travel | |
|---|---|
| Mr. Morales | $2,737.60 |
| Mr. O'Toole | 1,617.17 |
| Mr. Sandman | 780.18 |
| Telephone | 255.99 |
| Express Mail | 181.75 |
| Experts/Services | 1,599.69 |
| TOTAL | $7,172.38 |

In summary, the court awards the following fees and costs:

Martin Geer:
To November 26, 1980:      854.3 hrs. × $75/hour  =  $64,072.50
From November 26, 1980: 1054.3 hrs. × $75/hour  =   79,072.50
Peter Sandman:              35   hrs. × $75/hour  =    2,625.00
James Morales:             412.3 hrs. × $75/hour  =   30,922.50
John O'Toole:              396.4 hrs. × $75/hour  =   29,730.00
Paul Reingold:             71.25 hrs. × $75/hour  =    5,343.75
Law Clerks:                214   hrs. × $30/hour  =    6,420.00
Costs                                                  7,172.38
       TOTAL                                       $225,358.63

IT IS SO ORDERED.