Mary WILLIS, et al.

v.

**Louis SULLIVAN, Secretary, Health and Human Services.**

No. 3:88–0372.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 6, 1990.

David A. Ettinger, Legal Services of Middle TN, Inc., Nashville, Tenn., for plaintiffs.

William Warren, III, Asst. U.S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, Senior District Judge.

Counsel for the plaintiffs in this class action challenging actions of the Secretary of Health and Human Services have applied to this court for an award of attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. Sec. 2412. In pertinent part, that statute provides that

a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any ... proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The United States has not opposed the application and therefore apparently concedes the appropriateness of a fee award. As discussed below, this court also agrees that the prerequisites of a fee award have been met, but nevertheless believes the amount requested is excessive.

As indicated by the statutory language quoted above, the natural first question is whether the plaintiffs were the prevailing party. Clearly they were. First, although the case was eventually settled, the mere fact of a settlement does not preclude classification of a party as a prevailing party for EAJA purposes. See Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Second, the three original named plaintiffs all received the complete relief they requested as individuals. Third, the settlement agreement provided the relief sought on behalf of a class including all Tennessee residents who were approved for benefits under Titles II and XVI of the Social Security Act and had an attorney fee approved on or after February 1, 1985. This will undoubtedly result in a large amount of additional benefits being granted to this rather large group of individuals. True, the agreed order did not grant relief to members of the proposed class who had an attorney fee approved prior to February 1, 1985, but their class status had never been certified, and furthermore their rights were in no way prejudiced by the final order. Thus, the court concludes that the plaintiffs were the "prevailing party" within the meaning of 28 U.S.C. Sec. 2412.[1]

The second critical question is whether the position of the United States throughout this action was substantially

---

1. The limited financial conditions of the plaintiffs clearly indicates that the "party" definition in 28 U.S.C. Sec. 2412 poses no threat to an EAJA fees award in this case.

justified. The government bears the burden of proving that its position was substantially justified. *See United States v. 0.376 Acres of Land*, 838 F.2d 819 (6th Cir.1988) (including the dissent); *Sigmon Fuel Co. v. Tennessee Valley Authority*, 754 F.2d 162 (6th Cir.1985) ("A party that prevails in a case is entitled to attorneys' fees ... unless the government shows that its position was substantially justified"); *In re Cohen*, 793 F.2d 1291 (6th Cir.1986) (full text not published). However, the government has not even attempted to make such a showing in this case. Furthermore, the significance of this failure is exacerbated by the fact that the case was settled before full argument on the merits was presented to the court. The court simply does not have the benefit of viewing or hearing each party's complete analysis of the factual and legal issues involved. Ultimately, however, it appears that this case arose out of the Social Security Administration's obvious failure to comply with its own regulations and POMS instructions. This being so, the court concludes that the Secretary's position was not substantially justified.

■ Since there has not been the slightest hint of any special circumstance which would make a fee award unjust, the determinations that the plaintiffs were the prevailing party and that the defendant's position was not substantially justified require the conclusion that an award is appropriate. Thus, the next question concerns the size of the award. This may in turn be divided into two components. The court must first analyze the number of hours of service for which compensation is claimed. Next, the court must determine the proper hourly rate in order to reach the final computation of reasonable fees.

■ Two attorneys have submitted affidavits detailing the services provided in this case. William Stephens requests compensation for 23.4 hours of service. His co-counsel, David Ettinger of Legal Services of Middle Tennessee, requests an award to Legal Services of Middle Tennessee for 79.8 hours of service. For the most part, these amounts are accepted. It appears that both counsel have used good billing judgment in general, but the court exercises its discretion to make a few minor reductions despite the fact that a good faith basis exists for counsels' complete claim.

■ The first three hours listed on Stephens' fee petition are for activities prior to the actual beginning of representation or even communication with those individuals who would eventually be plaintiffs. In essence, the time involved finding out about a class action in California and then determining whether some of his own past clients might be able to successfully bring a similar action. The court concludes that this was "general awareness" activity which should not be compensated as specific representation of a client. Additionally, the court reduces the 2.5 hours claimed for 9/17/87 by one half to account for travel time at a lesser rate and some inevitably nonproductive time involved in a working lunch. The court further notes that 25 of Stephens' 28 accepted entries specifically mention some communication with co-counsel Ettinger. This court frequently rejects fees for time spent in communication with co-counsel as unnecessary or duplicative. However, the complexity and enormity naturally associated with a class action make such conferences more palatable in this instance. Furthermore, Ettinger ordinarily did not request compensation for those same times. Thus, the court concludes that it will make no further reductions in the times submitted by Stephens.

Likewise, the court makes only minor adjustments in Ettinger's itemized statement of services rendered. It appears that counsel has conservatively estimated the reconstructed hours. His commendable 10% reduction in addition to the conservative estimates renders his request for compensation of 2.9 reconstructed hours completely reasonable.[2] Of the 76.9 hours for

---

2. The court ordinarily strikes time devoted to a motion for a continuance not necessitated by the adversary or the clients. The court does not strike the 7/28/89 entry in this instance because counsel's conservative estimates of recon-

which there are contemporaneous time records to support the requested fee, the court only eliminates a small portion of time related to research and writing.

■ In particular, the court strikes the last 2.5 hours devoted to drafting the complaint. The requested 11.5 hours for this activity is excessive. Granted, the complaint was a lengthy instrument, but a great portion was simply a recitation of very basic and simple facts. Furthermore, counsel has been or is hereby given credit for an additional 2.5 hours of analysis of the POMS instructions, and that provided the foundation for the most substantive part of the complaint. The court also finds roughly 6 hours of preparation for the short oral argument in support of class certification to be excessive, especially since between 4 and 5 hours had already been committed to memorandum preparation on the same issue. Thus, the court strikes an additional 3 hours.

■ Having determined the hours of service for which a fee award is appropriate, the sole remaining issue concerns the proper hourly rate. Section 2412(d)(2)(A) of Title 28 of the United States Code provides that "attorney fees [pursuant to the Equal Access to Justice Act] shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee." Surprisingly, this court has never before been presented with a request to award greater than $75 per hour to account for a cost of living increase.[3] In this case, however, the plaintiffs request an hourly rate of $99 to account for increases in the cost of living since October 1, 1981, the original effective date of the Equal Access to Justice Act. In support of this claim, the plaintiffs have attached a copy of the Department of Labor's urban consumer price index for 1970 through part of 1989.

A strong majority of courts addressing this issue have determined that cost of living adjustments are appropriate and should be computed from the Act's original enactment date. *See Ramon–Sepulveda v. I.N.S.*, 863 F.2d 1458 (9th Cir.1988); *Allen v. Bowen*, 821 F.2d 963 (3rd Cir.1987); *Sierra Club v. Secretary of Army*, 820 F.2d 513 (1st Cir.1987); *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2nd Cir.1987); *Hirschey v. F.E.R.C.*, 777 F.2d 1 (D.C.Cir.1985); *Holden v. Bowen*, 668 F.Supp. 1042, 1047 (N.D.Ohio 1986). *See also Baker v. Bowen*, 839 F.2d 1075, 1984 (5th Cir.1988) (apparently views 1981 as an appropriate reference point, but emphasizes adjustment not automatic and should be limited to ensuring adequate representation). These decisions reject use of the EAJA's August 1985 reenactment date as the "base" date for inflationary adjustments on the ground that legislative history indicates the original enactment date is the important one. In particular, it has been noted that the provision was not actually "reenacted" in 1985. Rather, Congress simply repealed the original act's expiration provision.

Despite the persuasive argument articulated in the above-cited cases, this court must be more concerned with the instructions from the Sixth Circuit Court of Appeals. The one Sixth Circuit decision addressing this issue is *Chipman v. Secretary of Health and Human Services*, 781 F.2d 545 (6th Cir.1986). Although not delving into an analysis of legislative history, the *Chipman* court clearly viewed the August 1985 "reenactment" date as an acceptable reference point for computing adjustments for inflation. Specifically, the *Chipman* court's response to the plaintiff's objection to the district court's denial of an inflationary adjustment to the $75 hour rate for pre–1985 services was as follows:

> In this regard, we think it important that the $75 statutory rate is a ceiling and not a floor. Moreover we note that Congress, in reenacting 28 U.S.C. Sec. 2412(d) on August 5, 1985, did not raise the $75 maximum hourly rate despite the rise in the cost of living since its original enactment in 1980. *See* Pub.L. No. 99–80, Sec. 6, 99 Stat. 186 (1985). Accordingly, we do not believe the district court

---

structed time more than make up for this virtually insignificant claim.

**3.** At least not in any case in which a fee award was appropriate.

abused its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA.

*Id.* at 547. Although not discussed in *Chipman,* it should be noted that inflationary pressures were a far more serious concern in 1981 than in 1985. Thus, a decision to "restart" the base ceiling rate at $75 in 1985 would not be without rationale. In essence, it would reflect the idea that inflation was not of critical importance under then present conditions and that $75 per hour would still ordinarily be a reasonable rate in 1985 even if was also a reasonable rate in 1981. The mere fact that inflation was present does not mean it was so significant as to automatically justify an increased rate for attorney fees. *See Baker, supra.* However, the presence of the cost of living allowance in the statute would allow for adjustments when and if the inflationary impact became more significant.

Despite the relatively small inflation rate of the past few years, this court accepts that the gradual effect of that inflation does justify a cost of living adjustment to the $75 "cap." However, in view of the *Chipman* instruction, and in light of the fact that cost of living adjustments are apparently somewhat discretionary anyway, this court will only adjust for cost of living increases since August of 1985. *See also, Johnson v. Meese,* 654 F.Supp. 270, 271, 272 (E.D.Mich.1987). Furthermore, the court rejects the plaintiffs' contention that all of the attorneys' services should be compensated at current inflation-adjusted rates. If services had begun in the reference year, whether 1981 or 1985, the plaintiffs' reasoning would allow compensation for the reference year services at the higher current inflation-adjusted rates despite the fact that Congress established a $75 maximum rate for services rendered in that year. While this could be justified on the theory that such a calculation would provide "interest" on "unpaid" bills for services rendered in previous years, the court does not believe this was the intent of Congress. Certainly attorney fee rates in private practice, if consistent throughout the time of service, are ordinarily computed according to the prevailing rate at the beginning of service, not vice-versa. The court therefore concludes that the plaintiffs should receive no greater rate for services rendered than the inflation adjusted rate for the year in which those particular services were provided.

In this case, attorney Stephens provided 9.35 hours of compensable service in 1987. Multiplying the base $75 hourly rate by the 1987 average consumer price index (113.6), and then dividing by the consumer price index for reference month of August, 1985 (108.0) yields an inflation-adjusted hourly rate for the 1987 services of $78.89. The same type of calculation reveals an hourly rate of $82.15 and $85.97 for the years of 1988 and 1989 respectively.[4] The appropriateness of these rates as the statutory "cap" is additionally supported by the fact that they appear to be just under the top end of the prevailing market rates for cases of this nature. As both Stephens and Ettinger are very experienced in this area, it is also fitting that they be awarded fees at the maximum "cap" rate. Since Stephens is being given credit for 8.5 hours in 1988 and 1.3 hours in 1989, his final fee award amounts to $1,547.65.

After reducing the number of claimed hours on Ettinger's application as discussed earlier, it appears that Ettinger should receive compensation from the United States for 17 hours in 1987, 47.7 hours in 1988, and 9.6 hours in 1989. One hour of the fees related time in 1989 will be compensated at a paralegal rate of $35 per hour. All other times will be compensated at the rates applied to attorney Stephens as discussed in the preceding paragraph. This results in a final fee award for Ettinger's Legal Services of Middle Tennessee in the amount of $6,034.02.

An appropriate order will be entered.

---

**4.** The average consumer price index for 1988 was 118.3. Because the most recent index available to the court for 1989 was from May, the court simply used that figure—123.8.