WE WHO CARE, INC., et al., Plaintiffs,

v.

Louis SULLIVAN, Secretary of U.S. Department of Health and Human Services, Defendant.

Civ. No. 89–0172–P.

United States District Court,
D. Maine.

Dec. 19, 1991.

Jack Comart, Pine Tree Legal Assistance, Inc., Augusta, Me., for plaintiff.

Marina E. Thibeau, Asst. Atty. Gen., Augusta, Me., for Com'r, Maine Dept. of Human Services.

David R. Collins, Asst. U.S. Atty., Portland, Me., Joyce McCourt, Asst. Regional Counsel, U.S. Dept. of HHS, Boston, Mass., for Louis Sullivan.

## ORDER GRANTING PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES

GENE CARTER, Chief Judge.

This case arose out of a class action under Federal Rule of Civil Procedure 23(b)(2) brought by applicants for Aid to Families with Dependent Children (hereinafter "AFDC") to challenge Defendant Louis Sullivan's, Secretary of U.S. Department of Health and Human Services, regulations that limited to $1,500 the amount of equity that an AFDC recipient could have in an automobile and thus be eligible for AFDC benefits. Plaintiffs alleged that these regulations were arbitrary and capricious, were promulgated in violation of the Administrative Procedure Act, and violated federal law.

■ The Court issued a declaratory judgment dated January 28, 1991, declaring that the challenged regulations were invalid. *We Who Care, Inc. v. Sullivan,* 756 F.Supp. 42 (D.Me.1991).[1] Plaintiffs now seek an award of attorney's fees and costs, totalling $20,093.03, pursuant to the Equal Access to Justice Act (hereinafter "EAJA"), 28 U.S.C. § 2412(d).[2]

1. In May 1991, the Secretary filed a Notice of Appeal with the Court of Appeals for the First Circuit. In June 1991, the Secretary also filed in this Court, pursuant to Rule 60(b)(2), a motion to set aside the judgment based upon newly discovered evidence. That motion was denied on June 26, 1991. Subsequently, on August 8, 1991, the Court of Appeals dismissed the Secretary's appeal, based upon its voluntary motion to dismiss. Plaintiff's Memorandum of Law in Support of Motion for Award of Attorney's Fees (hereinafter Plaintiff's Memorandum) at 2.

2. Plaintiffs' counsel received $8,175 in fees and costs from the State of Maine pursuant to a fee settlement under 42 U.S.C. section 1988. Plaintiffs were not compensated for expert fees in light of the recent Supreme Court decision in *West Virginia University Hospital, Inc. v. Casey,* — U.S. —, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), which stated that the "reasonable expenses of expert witnesses, the reasonable cost of any study analysis ... which is found by the court to be necessary ..." is recoverable under the Equal Access to Justice Act. *Id.*

According to Plaintiffs, as a condition of settlement, Plaintiffs agreed to seek EAJA funds and to reimburse any duplicative funds to the State of Maine. Affidavit of Jack Comart, Esq. (hereinafter "Comart's Affidavit"), ¶ 8. According to Defendant, "the Secretary has been advised by the State that this was a voluntary move by the plaintiffs' [sic], the appropriateness of which the State was unsure." Opposition of Secretary Sullivan to Plaintiffs' Motion for Attorney's Fees (hereinafter "Defendant's Opposition") at 11 n. 6. Defendant referred to an attached letter dated April 22, 1991, to Jack Comart from Marina Thibeau, but did not include it as a part of the record and hence, it cannot be reviewed by the Court.

Defendant notes that in that settlement, Plaintiffs agreed to accept $8,030 (all but two hours were paid at the rate of $85 per hour) from the state Defendant in this case, and that amount covered ninety-six of the same hours now requested under the Act. Defendant argues that the Court should allocate the fees between the state and federal Defendants because ninety-six of the requested hours have already been paid by the former and some of the requested costs have also been paid. Defendants' Memorandum at 10–11.

Plaintiffs' counsel counters that:

[The Act i]s not intended to affect or limit the computation of reasonable attorney fees under any other provision of law authorizing an award of fees for litigation under a particular statute, such as the Civil Rights Acts [sic], designed to promote private enforcement of that Act.

Plaintiffs' Reply Memorandum of Law in Support of Motion for Award of Attorneys Fees (hereinafter "Reply Memorandum") at 6 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S.C.C.A.N. 4953, 4994). Plaintiffs conclude that the Act does not impose an election of remedy requirement and that the settlement of their section 1988 fee claim was entirely appropriate. Reply Memorandum at 6. They analogize to Social Security cases "in which fees are obtainable both from past-due Social Security benefits and under EAJA. In those cases, counsel is not permitted to double-dip, but can receive the maximum of the greater amount found reimbursable under EAJA or under the Social Security Act." *Id.* at 6 (citing

## I. *Discussion*

The EAJA provides in pertinent part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). To be entitled to fees, the plaintiff must prevail, the Secretary's position must not be substantially justified, and no special circumstances must exist.[3] Plaintiffs allege that they are entitled to an award of attorney's fees and costs under the EAJA. First, they argue that they are the prevailing party in this litigation. Second, they argue that the Defendant's position was not "substantially justified" under the EAJA. Lastly Plaintiffs argue that they are entitled to fees in excess of $75 per hour, based on cost-of-living and "special factor" exceptions. For the reasons that follow, the Court finds that (a) Plaintiffs are the prevailing party; (b) Defendant's position was not "substantially justified" under the EAJA; and (c)

Plaintiffs are entitled to fees in excess of $75 per hour, based on a cost-of-living adjustment, but not on any "special factor."

#### A.

The EAJA provides that the "prevailing party" may seek recovery of fees and costs. 28 U.S.C. § 2412(d)(1)(A). The Court of Appeals for the First Circuit noted that a plaintiff may be considered the prevailing party if he or she "succeed[s] on any significant issue in litigation which achieve[s] some of the benefit the party sought in bringing suit." *McDonald v. Secretary of Health and Human Services,* 884 F.2d 1468, 1474 (1st Cir.1989) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). *See also Estate of Duplissis v. Bowen,* 640 F.Supp. 842, 845 (D.Me. 1986).

■ In this action, Plaintiffs sought to invalidate the AFDC $1,500 vehicle asset regulation. The Court granted declaratory judgment in their favor on this issue, holding invalid the Federal and State regulations that Plaintiffs challenged in this action. Thus, they "clearly succeeded in obtaining a substantial portion of the benefit sought." There is no question that Plaintiff is a prevailing party in this litigation,[4]

*Wells v. Bowen,* 855 F.2d 37 (2d Cir.1988); *Talbott v. Bowen,* 832 F.2d 111 (8th Cir.1987)).

The Court concludes that the section 1988 fee settlement was appropriate and does not preclude Plaintiffs from seeking attorney's fees and costs under the Act. There is no indication that this settlement was improper. As noted by Plaintiffs, "[t]his Court has consistently encouraged settlement of all issues, including attorneys fees. Each year Pine Tree Legal Assistance files in this court perhaps 8–10 lawsuits against the Maine Commissioner of Human Services. In virtually every one of those cases the parties have settled the issue of fees." Reply Memorandum at 5.

The Court concurs with Plaintiffs' assessment that the settlement rate of $85 does not preclude seeking a higher rate under the Act:

The Secretary again suggests that if Plaintiffs wanted a higher rate then Plaintiffs should have filed a § 1988 fee petition. The $85 rate arose based upon the then current agreement between Pine Tree Legal Assistance, Inc. and the Office of the Attorney General establishing a protocol for settling fee cases and establishing the $85 rate for a person of counsel's experience. (That agreement has since been changed to provide $100 per hour.) The

agreement with the Office of the Attorney General sets a rate for cases which are settled. If counsel has to go to court for fees, then counsel may seek higher rates. It is therefore disingenuous for the Secretary to raise this issue. The State settled fees. The Secretary has chosen to not settle fees. If the Secretary's argument on settling fees is adopted by this court, then the parties will have little incentive to settle fees. In a settlement each party gives a little: hence the $85.00 rate. *Id.* at 7. The Court concludes that the divided allocation suggested by Defendant is not appropriate, and it finds that the section 1988 fee settlement regarding fee reimbursement is not improper.

**3.** Neither party argues that special circumstances exist.

**4.** Defendant states in its Opposition of Secretary Sullivan to Plaintiffs' Motion for Attorney's Fees (hereinafter Defendant's Opposition Memorandum):

This statute authorizes an award of attorney's fees to a prevailing party in a civil action brought against the United States in any court

and, hence, may seek recovery of attorney's fees and costs.

### B.

■ The United States Supreme Court has articulated the standard to be applied in the determination of whether the government's position was substantially justified. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988). A "substantially justified" position is one that is reasonable, based both in law and in fact. *Id.*

The Court of Appeals for the First Circuit adopted the "reasonableness" standard, prior to the Supreme Court's ruling in *Pierce*, in a three-part test: whether the government had a reasonable basis for the facts alleged;[5] whether it had a reasonable basis in law for the theories advanced; and whether the facts supported its theory. *United States v. Yoffe*, 775 F.2d 447, 450 (1st Cir.1985). The Secretary bears the burden of proving that its position[6] was justified by a preponderance of the evidence. *McDonald*, 884 F.2d at 1475.

The Court concludes that Defendant has not met its burden in establishing the justifiability of both the agency's position and the government's litigation position in proving the second and third prongs of the test. There was no basis in law for the Secretary's agency position and, similarly, his litigation position was not justified or reasonable. The Court finds that Plaintiffs, as the prevailing party, shall receive fees and costs in accordance with the EAJA.

### C.

#### i. *Cost-of-Living Adjustment*

■ The EAJA provides that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $75 per hour unless the court determines that *an increase in the cost of living* ... justifies a higher fee." *Pierce*, 487 U.S. at 571, 108 S.Ct. at 2553 (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)) (emphasis added). *See also Wells v. Bowen*, 855 F.2d 37, 43 (2d Cir.1988) ("Notwithstanding the narrowing of the 'special factor[s]' language in *Pierce* ... it remains clear that EAJA's $75 per hour rate can be increased to reflect a demonstrable increase in the cost of living since the date of the statute's effectiveness."). Similarly, the Court of Appeals for the First Circuit has recognized that a cost-of-living adjustment for inflation is appropriate in determining attorney's fees under the EAJA. *Sierra Club v. Secretary of Army*, 820 F.2d 513, 523 (1st Cir.1987) ("The federal courts remain able to augment hourly rates by considering changes in the cost of living which took place since October 1981 ... and thereafter."). *Cf. Wilcox v. Ives*, No. 85–0342–P, slip op. at 12 (D.Me. July 28, 1989) ("Plaintiffs argument on [the increase in cost of living] is limited to a single sentence in a supporting affidavit, stating that 'there have been significant increases in the cost of living since the [EAJA] was enacted several years ago.' ").[7]

---

having jurisdiction of that action unless the court finds that the position of the United States was substantially justified, or finds that special circumstances make an award unjust. In the present case, plaintiffs are not entitled to attorney's fees because the Secretary's position was substantially justified.
Defendant's Opposition Memorandum at 5–6.

**5.** Because this case was based upon a stipulated record, including stipulated facts, the Court need not address the first prong of the reasonableness test.

**6.** The government's position means, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." *McDonald v. Secretary of Health and Human*

*Services*, 884 F.2d 1468, 1476 (1st Cir.1989) (quoting 28 U.S.C. § 2412(d)(2)(D)).

**7.** A majority of courts have determined that cost-of-living adjustments are appropriate and should be computed from the EAJA's original enactment date of October 1, 1981, rather than from its reenactment date of August 5, 1985. *See, e.g., Ramon–Sepulveda v. Immigration and Naturalization Service*, 863 F.2d 1458, 1464 (9th Cir.1988); *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702, 705 (2d Cir. 1987); *Allen v. Bowen*, 821 F.2d 963, 967 (3d Cir.1987); *Sierra Club*, 820 F.2d at 521–22; *Hirschey v. Federal Energy Regulatory Commission*, 777 F.2d 1, 5 (D.C.Cir.1985). *Cf. Chipman v. Secretary of Health and Human Services*, 781 F.2d 545, 547 (6th Cir.1986); *Willis v. Sullivan*,

Courts have held that the Consumer Price Index (hereinafter "CPI") may be used to determine cost-of-living adjustments under the EAJA. *See, e.g., Garcia v. Schweiker,* 829 F.2d 396, 401 (3d Cir. 1987); *Sierra Club v. Marsh,* 639 F.Supp. 1216, 1221–22 (D.Me.1986), *aff'd,* 820 F.2d 513 (1st Cir.1987). Plaintiffs note that since 1981, the CPI has risen 40.9%. USDOL, *Monthly Lab.Rev.,* Bureau of Labor Statistics, August 1991 (Exhibit to Comart's Affidavit). Here, if the inflation factor of 40.9% is multiplied by the statutory cap of $75 under the EAJA, the adjusted hourly rate is $105.68.[8]

The Court finds that Plaintiffs' counsel is entitled to a cost-of-living adjustment for attorney's fees under the EAJA in the revised amount of $105.68 per hour. It bases this adjustment on the inflation factor of 40.9% (calculated since the inception of the EAJA on August 1, 1981).[9]

ii. *Special Factor Exception*

■ The EAJA also provides for an increase in the hourly rate of attorney's fees if a "special factor," such as the limited availability of qualified attorneys for the litigation involved, justifies a higher fee. *See* 28 U.S.C. § 2412(d)(2)(A)(ii); *see also Pierce,* 487 U.S. at 571, 108 S.Ct. at 2553. For the reasons that follow, the Court finds that Plaintiffs are not entitled to such an increase under the "special factor" exception.

The Supreme Court stated that:

[This exception] must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Pierce,* 487 U.S. at 572, 108 S.Ct. at 2554.[10] Thus, the "special factor" exception should be "interpreted narrowly and cannot be read to encompass situations in which normally skilled and qualified attorneys are simply in short supply." *Wells,* 855 F.2d at 42.

Courts have held that Social Security law is a type of "limited availability" contemplated by the EAJA. *See, e.g., Pirus v. Bowen,* 869 F.2d 536, 541–42 (9th Cir.1989) ("The special expertise of the attorneys was necessary because the litigation involved a highly complex area of the Social Security Act, with which plaintiff's attor-

730 F.Supp. 785, 788–89 (M.D.Tenn.1990); *Trahan v. Regan,* 625 F.Supp. 1163, 1168 (D.C. 1985). *Chipman* has been criticized or questioned by most circuits. *See, e.g., Ramon-Sepulveda,* 863 F.2d at 1464; *Trichilo,* 823 F.2d at 704; *Allen,* 821 F.2d at 96; *Sierra Club,* 820 F.2d at 521.

This Court concurs with the majority of courts that the cost-of-living adjustment should be computed from October 1, 1981, not August 5, 1985.

8. Plaintiffs also note that the State of Maine pays an hourly rate of $100 to Pine Tree Legal Assistance, Inc. (hereinafter "Pine Tree") in cases in which fees are settled. Comart's Affidavit, ¶ 6.

9. Plaintiffs' affidavits attest that Plaintiffs' requested hourly rate is well below current market rates for this type of litigation. *See* Affidavit of Jed Davis, Esq., ¶ 5 ("The base rate at which Mr. Comart is seeking compensation is well below the prevailing market rate in this area for litigation of this complexity conducted by attor-

neys of Mr. Comart's experience and qualifications. It is two-thirds the rate which our firm would charge for similar services."); Affidavit of Barry Margolin, Esq., ¶ 6 ("The base rate at which Attorney Comart is seeking compensation is well below the prevailing market rate in this area for any degree of complex litigation and less than 50% of the rate which our firm would charge for similar services.").

10. The Supreme Court also noted that:

If 'the limited availability of qualified attorneys for the proceedings involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap—since the 'prevailing market rates for the kind and quality of the services furnished' are obviously *determined* by the relative supply of that kind and quality of services. 'Limited availability' so interpreted would not be a 'special factor,' but a factor virtually always present when services with a market rate of more than $75 have been provided.

*Pierce,* 487 U.S. at 571–72, 108 S.Ct. at 2553–54.

neys had already developed familiarity and expertise."); *Bowker v. Bowen*, 706 F.Supp. 88, 90 (D.Me.1989) ("Affidavits from attorneys in counsel's locality state that counsel has a great deal of experience and expertise in Social Security law, a highly specialized field, and that he provides 'excellent representation' on ... claims.... Another attorney's affidavit states that few attorneys in counsel's area practice in this field ..."); *McDonald v. Bowen*, 693 F.Supp. 1298, 1306 (D.Mass.1988) ("The attorneys who represented the plaintiffs in this case are all specialists in the law of public assistance [Social Security] benefits ... [and] there is a relative shortage of attorneys possessing the specialized skills brought to bear by the applicants."), *aff'd in part, remanded in part*, 884 F.2d 1468 (1st Cir.1989). *Cf. Garcia*, 829 F.2d at 400 ("The mere fact ... that one private counsel and one non-profit agency did not wish to handle Garcia's claim does not establish limited availability of qualified attorneys for the case."). None of these cases, however, in which a finding of "limited availability" was made, involved AFDC–related litigation.

Here, Plaintiffs submitted several affidavits to support their argument that the attorney's fees fall under the "special factor" exception and that therefore, they are entitled to a 25% "multiplier," for a total hourly rate of $132.00.[11] Defendant argues that Plaintiff's supporting affidavits do not meet the "necessary expertise" or "limited availability" test. Defendant's

Opposition Memorandum at 13. Defendant cites cases handled by other attorneys from the Legal Assistance Corporation, in which the rate of payment under the EAJA was held to the $75 per hour limit, or had only been requested at the cap level of $75. Defendant's Opposition Memorandum at 14 (citing *Wilcox v. Ives*, No. 85–0342–P, slip op. (D.Me. July 28, 1989); *McKenney v. Sullivan*, No. 89–0244–9 (D.Me.), Petition for Attorneys Fees, filed November 19, 1990).

This Court's decision in *Wilcox* is germane to the Court's analysis here in that it arose from a motion for award of attorney's fees in AFDC-related litigation.[12] In *Wilcox*, the Court did not "find any other special factor sufficient to justify the award of a higher fee. The preparation and representation of Plaintiffs' case required no specialized skill beyond that required of a competent attorney possessing general legal knowledge and ability useful in all litigation." No. 85–0342–P, slip op. at 12.

Notwithstanding Plaintiffs' affidavits, the Court finds that, similar to *Wilcox*, Plaintiffs' AFDC-related case did not involve the "distinctive knowledge" or "specialized skill" required under the EAJA to apply the "special factor" exception. Plaintiffs' affidavits do not persuade the Court that Plaintiffs' counsel falls within this narrowly construed exception. Accordingly, the Court will not grant an in-

---

**11.** One affidavit stated that:

> I know of no private attorneys in the State of Maine who would take on this type of public benefits case. Our firm is one of the few firms in the State of Maine who would take on this type of public benefits case.... Public benefits litigation is a specialized area of law which the private bar is not generally equipped to handle.

Affidavit of Jed Davis, Esq., ¶ 6. Another affidavit stated that "I know of no other attorneys, outside of Pine Tree Legal Assistance, Inc. in this state who would have handled this type of litigation." Comart's Affidavit, ¶ 12. Similarly, another affidavit stated that, "None of the [Volunteer Lawyers Project][ ]'s referral attorneys have expressed any willingness to be referred complex public benefits litigation. Furthermore, I am not aware of any private attorneys

who would take these types of cases." Affidavit of Charles G. Genegar, Esq., ¶ 3. *See also* Affidavit of Barry Margolin, Esq., ¶ 7. Lastly, an affidavit from the Director of the Maine Lawyer Referral & Information Service states that, "Because there are no private attorneys connected with our service who handle public assistance benefits litigation, all such inquiries are referred to Pine Tree Legal Assistance, Inc..... In addition, the Maine State Bar Association does not maintain any public benefits section." Affidavit of Jackie Rogers, ¶ 3, 4.

**12.** In *Wilcox*, the Court issued its final opinion on a stipulated record, finding for Plaintiffs and holding that the Health and Human Services regulation prohibiting multiple pass-through payments, 45 C.F.R. section 302.51, contradicted the federal statute, 42 U.S.C. section 657(b)(1), and was therefore invalid.

crease in the hourly rate based on the "special factor" exception under the EAJA.

In sum, the Court finds that only the cost-of-living adjustment justifies the imposition of an attorney's fee in excess of $75 per hour. The Court will grant a fee increase in the hourly rate from $75 to $105.68 per hour on this basis.

### D.

■ The parties dispute the number of hours that should actually be compensated. Defendant contends that "most of the hours expended prior to the filing of the complaint ... should not be paid by EAJA...." Defendant's Opposition Memorandum at 15. Defendant fails to identify what hours purportedly should not be covered under the EAJA. Plaintiff concedes that time spent in administrative agency work, as opposed to legal and factual research preparation for litigation, should not be compensated and, therefore, it reduces its original request by .80 hours. Reply Memorandum at 8. Aside from this total of .80 hours, Plaintiffs assert that all other requested hours are compensable.[13]

The Court has reviewed the time spent in this case and the manner in which it was spent, and finds both to be appropriate and reasonable, excepting the .80 hour for administrative agency work, which Plaintiffs have already agreed to omit. Thus, Plaintiffs' counsel is entitled to compensation for 132.1 hours of attorney's fees [14] at an hourly rate of $105.68, totalling $13,960.33, plus $2,550.53 in costs, for a total of $16,-510.86.

For the foregoing reasons, it is hereby *ORDERED* that Plaintiffs' Motion for Attorney's Fees and Costs be, and it is hereby, *GRANTED*, and Defendant is hereby *ORDERED* to compensate Plaintiffs for reasonable attorney's fees in the amount of Sixteen Thousand Five Hundred Ten Dollars and Eighty–Six Cents ($16,510.86).

---

**13.** Specifically, Plaintiffs assert that the disputed time spent on the motion to compel discovery, totalling 1.2 hours, and the motion for contempt, totalling 1.4 hours (for reply memorandum), should be compensated. The motion for contempt was filed on February 9, 1991, and the state began compliance on February 13, 1991. Although the motion was not successful, Plaintiffs argue that it was a catalyst in obtaining state compliance under the Act. Reply Memorandum at 10 (citing *Guglietti v. Secretary of Health & Human Services,* 900 F.2d 397, 401 (1st Cir.1990)).

Plaintiffs reject Defendant's argument that certain activities performed by Plaintiffs' counsel should be compensated at a lower rate. They could find no EAJA authority or any other

fee case to support Defendant's theory that different rates should be applied to different activities. *Id.* at 11. The sole case, *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir.1980), cited by Defendant in this regard involved section 1988 Civil Rights Fees. As Plaintiffs noted, "[t]he idea of different rates for different activities is purly [sic] dicta in that case." Reply Memorandum at 11.

The Court concurs with Plaintiff's assessment and will not require different rates for different activities.

**14.** This figure includes the recently added nine hours for fees incurred in researching and writing the Reply Memorandum.